**Beverly SANDERS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MARRIOTT CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 1999.

Decided July 12, 2000.

Kathy Kennedy, Philadelphia, for petitioner.

Kate A. Smith and Daniel Diloretto, Philadelphia, for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Beverly Sanders (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed an order of the Workers' Compensation Judge (WCJ) that granted Marriott Corporation's (Employer) petition to suspend and dismissed Claimant's reinstatement petition as moot. We affirm.

On February 26, 1996, Claimant was working as a general service food worker primarily making pizzas. On that date, Claimant suffered a work-related injury when she fell at work. A Notice of Temporary Compensation Payable was issued. Thereafter Claimant received total temporary disability benefits under a Notice of Compensation Payable (NCP) dated August 30, 1996. In October 1996, Claimant filed a reinstatement petition, alleging that "THE EMPLOYER STOPPED PAYING ME MY WORKER'S COMPENSATION BENEFITS AS OF SEPTEMBER 1, 1996 WITHOUT LEGAL CAUSE. I AM STILL UNABLE TO WORK DUE TO MY INJURY OF FEBRUARY 2, 1996. I REQUEST REINSTATEMENT OF MY COMPENSATION BENEFITS PLUS PENALTIES, INTEREST AND ATTORNEY'S FEES [sic, capitalization as in the original]." Claimant's Petition to Reinstate, Certified Record.[1] In addition,

---

1. By order of this court dated, September 29, 1999, Claimant was excused from filing a reproduced record. Hence, citations are to the certified record.

Claimant made a request for penalties, interest and attorney's fees.

In its answer to the reinstatement petition, Employer responded to Claimant's averment that Employer ceased making compensation benefits in relevant part as follows: "Denied. Strict Proof Demanded. By way of further response the Claimant has and continues to receive temporary disability benefits at the rate of $175.97 per week, based upon an average weekly wage of $195.52, under a notice of Compensation Payable dated August 30, 1996." Employer also denied Claimant was entitled to interest, penalties or attorney's fees.

Employer also filed a petition to suspend on the basis that Claimant had failed or refused to undergo reasonable and necessary medical care. In that petition to suspend, Employer declared that the date of the most recent payment of compensation was October 26, 1996. Employer also requested supersedeas. On the same day as filing the petition to suspend, Employer filed a petition requesting that the WCJ order Claimant to undergo a physical exam. In response to Employer's petition to suspend, Claimant filed an answer denying that she failed to undergo reasonable treatment. The petitions were assigned to a WCJ who conducted hearings and took evidence. On March 13, 1997, the WCJ entered an interlocutory order granting Employer's supersedeas request as of January 6, 1997.

In support of its petitions, Employer presented the medical testimony of Dr. Lubeck who examined Claimant. Dr. Lubeck testified that Claimant suffered from posttraumatic headaches but that this condition did not prevent her from returning to work. Employer also presented the testimony of Dr. Tahmoush who examined Claimant on June 5, 1996 and again on July 17, 1996. After his initial examination of Claimant, Dr. Tahmoush noted Claimant suffered from posttraumatic headaches and a shoulder strain. He recommended that Claimant not return to work until she

had a course of physical therapy for her shoulder and medication for her headaches. After his second examination of Claimant on July 17, Dr. Tahmoush concluded that the therapy and medication improved her ability to work and her medical condition. Dr. Tahmoush scheduled a follow up appointment in four weeks. Claimant did not return for any follow up care though. Dr. Tahmoush released Claimant to full employment, opining that a two-month period of physical therapy and medication were sufficient to restore Claimant to gainful employment. A final appointment with Dr. Tahmoush was scheduled for Claimant on October 23, 1996 but Claimant failed to keep this appointment also.

Employer also presented the testimony of David Tolbert, its manager at Claimant's place of employment. Tolbert was informed that Claimant was released to return to work. Tolbert contacted Claimant informing her to report to work on August 28, 1996 for a start up meeting. Tolbert testified that Claimant reported to the start up meeting and picked up her uniform. Tolbert gave Claimant her work schedule indicating that she was to report to work on September 2, 1996. Claimant failed to report to work as scheduled on that day and has not returned to work. Tolbert testified that Claimant did not contact him or any of her supervisors to inform them about her absence.

Claimant testified on her own behalf. Claimant conceded that she received the notice from Employer regarding her being medically cleared by Drs. Lubeck and Tahmoush to return to work on August 22, 1996. Claimant also admitted that she had not treated with any physician until she was referred to Dr. Karpin by her attorney representing her in the compensation proceedings. Claimant also presented the testimony of Dr. Karpin who first saw Claimant on October 17, 1996. Dr. Karpin opined that Claimant could not return to work.

The WCJ credited the testimony of Dr. Lubeck in that Claimant was capable of returning to her time of injury position. The WCJ further credited the testimony of Drs. Tahmoush and Karpin only to the extent that they conform with the opinions of Dr. Lubeck. The WCJ specifically stated that the "testimony of Dr. Karpin is found not to be credible or persuasive that Claimant remains disabled from work." WCJ's Finding of Fact (F.F.) No. 15. The WCJ found Claimant to not be credible regarding her expressed inability to return to her time of injury job.

Accordingly, the WCJ granted Employer's suspension petition, suspending Claimant's compensation benefits as of September 2, 1996. He further dismissed Claimant's reinstatement petition as moot as well as Employer's petition to compel Claimant to undergo a physical exam. Claimant appealed and the Board affirmed. Claimant now petitions this court for review.[2]

Claimant frames the only issue as: did the Board err as a matter of law in affirming the WCJ's decision where Employer, on its own, without authority and in flagrant violation of the Workers' Compensation Act,[3] suspended benefits, which were payable pursuant to an open NCP from September 1, 1996 through March 13, 1997 when Employer's supersedeas request was granted.[4] Claimant argues that Employer unilaterally ceased making wage replacement payments to her in September 1996 without any legal authority to do so in clear violation of established caselaw. *See, e.g., Gillis v. Workers' Compensation Appeal Board (Willits Roofing)*, 725 A.2d 257 (Pa.Cmwlth.1999); *Winkelmann v. Workmen's Compensation Appeal Board (Estate of O'Neill)*, 166 Pa.Cmwlth. 154, 646 A.2d 58 (Pa.Cmwlth.1994), *allocatur denied*, 540 Pa. 609, 655 A.2d 996 (1995) and; *Cunningham v. Workmen's Compensation Appeal Board (Inglis House)*, 156 Pa. Cmwlth. 241, 627 A.2d 218 (1993).

Claimant urges that this court reverse the Board's order and that Employer be directed to pay total disability benefits from September 1, 1996 through March 13, 1997, the period during which Employer allegedly unilaterally suspended payments. *See* Claimant's Brief at p. 14.

In response, Employer argues that "there is no evidence whatsoever regarding a cessation of claimant's benefits." Employer's brief at p. 6. Claimant does not controvert Employer's assertion. Moreover, Employer notes "no penalty may be imposed ... without proof of a violation of the [Workers' Compensation] Act or of a rule of the Department [of Labor] or Board." Employer's brief at p. 6, *Accord Spangler v. Workmen's Compensation Appeal Board (Ford)*, 145 Pa. Cmwlth. 56, 602 A.2d 446, 448 (1992).

■ Of course the fact that there is no evidence of record to support a finding that Employer ceased making payments is not meaningful until one knows who bore the burden to produce evidence of the payment or lack of payment. Where as here, Claimant is seeking penalties for the Employer's purported violation of the Act, the burden of producing such evidence and persuading the factfinder of the credibility of such evidence is the burden of the

---

2. Appellate review over an order of the Board is limited to determining whether constitutional rights were violated, an error of law was committed or whether substantial evidence supports the WCJ's findings of fact. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa. Cmwlth.1998).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4; 2501—2626.

4. Although in her statement of question presented Claimant lists the date of March 17, 1997 as the ending date for making wage replacement benefits; it is obviously an error. Elsewhere in her brief Claimant acknowledges that March 13, 1997, the date of the WCJ's interlocutory order granting Employer's supersedeas, was the last date of Employer's responsibility for wage replacement benefits. See Claimant's brief at pp. 8, 11, 12 & 14.

Claimant. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa.Cmwlth.2000)("This Court has held that a violation of that Act or its regulations must appear in the record for a penalty to be appropriate.... Therefore, once a claimant files a penalty petition, the onus is on him or her to establish a violation of the Act or its rules or regulations.") (citation omitted). Having ascertained that it was Claimant's burden to produce evidence of a violation of the Act or its regulations, namely, to produce evidence that Employer ceased making payments, we now examine the record to determine if Claimant produced such evidence.

We have thoroughly reviewed the record especially the transcript of the proceedings before the WCJ occurring on May 16, 1997 wherein Claimant testified before the WCJ and the deposition transcript of Tolbert. Nowhere in the record is there any evidence whatsoever that supports the bare allegation of the Claimant contained in her reinstatement petition (which Employer specifically denied) that Employer ceased paying benefits. Claimant never once testified that Employer ceased making payments. We note that the WCJ made no specific finding of fact regarding whether Employer ceased making payments or not. However, our review of the record reveals that if the WCJ had made a finding that Employer ceased making payments, the record being devoid of any evidence whatsoever in this regard, such a finding would be without substantial evidence in support thereof.

▉▉▉ Although Claimant alleged in her reinstatement petition that Employer ceased payment of benefits as of September 1, 1996, we note that petitions are not evidence until formally offered and admitted into evidence. *See, e.g.*, 34 Pa.Code § 131.52(c) entitled "First Hearing Procedures" which provides in relevant part that the WCJ "shall place in evidence as Bureau exhibits current Bureau documents with the same injury date and pertaining to the same claim, **with the exception of** the Employer's Report of Occupational Injury or Disease and **pleadings of the parties.**" (emphasis added). This rule of practice in the Workers' Compensation area is consistent with the common law regarding pleadings. *See Buehler v. United States Fashion Plate Co.*, 269 Pa. 428, 433, 112 A. 632, 634 (1921)("While the pleadings in a case determine the issues, primarily they are not evidence for any purpose, unless made so by act of assembly."). While Claimant could have formally sought to introduce her petition into evidence, she did not do so. *See also Miller v. Workers' Compensation Appeal Board (Community Hospital of Lancaster)*, 737 A.2d 830 (Pa. Cmwlth.1999). In *Miller*, a claimant sought to utilize an alleged admission by the employer made in its answer. We noted that in order to do so, claimant would have had to formally introduce employer's answer into evidence. We held that because claimant failed to offer employer's answer into evidence, the answer could not constitute evidence and thus there was no "evidence" of record of the employer's alleged admission. Thus, as in *Miller* so also here, Claimant failed to introduce the pleadings into evidence, as a result, there is no evidence to support a finding by the WCJ that Employer unilaterally ceased making payments.

▉▉▉ Just as petitions which are not formally offered and accepted into evidence are not evidence, briefs filed in this court are not part of the evidentiary record and assertions of fact therein which are not supported in the evidentiary record created below may not form the basis of any action by this court. *Erie Indemnity Co. v. Coal Operators Casualty Co.*, 441 Pa. 261, 265, 272 A.2d 465, 466–67 (1971)("Apparently, the court took into consideration facts alleged in the briefs, but briefs are not part of the record and the court may not consider facts not established by the record); *Federal Land Bank of Baltimore v. Sustrik*, 367 Pa.Super. 582, 533 A.2d 169, 175 (1987)("However, a brief,

and the statements contained therein, is [sic] not part of the record which an appellate court can take cognizance of without contravening established law to the contrary."). *See also Miller v. Department of Public Welfare*, 99 Pa.Cmwlth. 392, 513 A.2d 569, 570 n. 5 (1986)("Included in Petitioner's brief to this Court are some statistical studies of the availability of such jobs. Petitioner did not introduce any of these studies into evidence at her hearing before the Board so we are precluded from considering them now."). Thus, the bare assertion of fact in Claimant's brief filed in this court that Employer ceased making payments to her, which assertion is otherwise not supported in the evidentiary record created below, cannot legally form the basis of any action by this court.

■ Because there is no evidence in the evidentiary record created before the WCJ to support a finding that Employer ceased making payments to Claimant, we are unable conclude that the WCJ abused his discretion in not awarding penalties against Employer. Neither can we find fault with the WCJ's failure to order the Employer to pay compensation benefits from September 1, 1996 until March 13, 1997 where Claimant adduced no evidence whatsoever that. Employer did not pay compensation benefits during the relevant period.

Claimant does not argue in her brief to this court that the suspension of her benefits beyond March 13, 1997 was in error. Indeed, Claimant specifically states that "claimant request[s] that the Board's order affirming a suspension of benefits as of September 2, 1996 be modified to reflect a suspension of March 13, 1997...." Claim-

ant's brief at p. 8. Accordingly we do not address the propriety of the WCJ's suspension of Claimant's wage replacement benefits beyond March 13, 1997. Claimant only argues that the date upon which the WCJ found the suspension to have been proper, i.e., September 2, 1996, was an incorrect date and that the proper date should have been March 13, 1997, the date of the WCJ's grant of supersedeas. Claimant premises this argument on the alleged but unproven "fact" that on September 2, 1996, Employer unilaterally ceased making payments to her and that the WCJ's grant of suspension of that date improperly validates Employer's illegal actions. If there were evidence of record to support a finding that Employer did in fact unilaterally cease making payments to Claimant and the WCJ found such evidence credible, we would have no hesitancy in holding that the WCJ's mere grant of suspension as of September 2, 1996 did not serve to retroactively validate Employer's unilateral cessation of payments as of that date. *See, e.g., M.A. Bruder & Son v. Workmen's Compensation Appeal Board (Harvey)*, 86 Pa.Cmwlth. 353, 485 A.2d 93 (1984)(WCJ cannot retroactively justify employer's unilateral cessation of payment of benefits by grant of retroactive suspension of benefits). However, no such evidence exists and no such finding of fact was made. Thus, we cannot say that the WCJ's suspension of benefits as of September 2, 1996 constituted an improper retroactive validation of Employer's unilateral cessation of making payments because we cannot conclude that the Employer did in fact cease making payments as of that date.[5]

5. Although Claimant filed a reinstatement petition, it was not necessary to do so. Once a notice of compensation issues, the liability of the employer to make wage replacement payments continues until a legally recognized event, such as an order from an appropriate tribunal terminates such liability. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998). Where the employer unilaterally ceases making such wage replacement benefits, the prop-

er petition to file is a penalty petition which places the initial burden on the claimant to produce evidence that a violation of the Act or its rules or regulations occurred. *Shuster*. Once the claimant produces such evidence, the burden then shifts to the employer to prove that it did not violate the Act or its rules or regulations. *Id.* In contrast, in a reinstatement petition, a claimant bears the heavier burden of proving generally that 1) through no fault of her own, her earning power is

Accordingly, the order of the Board is affirmed.

## *ORDER*

AND NOW, this 12 th day of July, 2000, the order of the Workers' Compensation Appeal Board, docketed at A98–1269 and dated August 9, 1999 is hereby affirmed.

again affected by the work-related injury and 2) the physical disability caused by her original work related injury continues. *Magulick v. Workers' Compensation Appeal Board (Bethlehem Steel Corp.)*, 704 A.2d 176 (Pa.Cmwlth. 1997). Thus, if as alleged by Claimant herein, Employer did in fact unilaterally cease making wage replacement benefits, Claimant need only have filed a penalty petition. A reinstatement petition, with its heavier burden, is properly filed when wage replacement benefits have been legally terminated, suspended or modified. *See* Section 413(a) of the Pennsylvania Workers' Compensation Act.

We note that the form of a petition filed is generally not controlling. *See, e.g., Schriver v. Workers' Compensation Appeal Board (Dept. of Transportation)*, 699 A.2d 1341 (Pa.Cmwlth. 1997). Although the form of the petition is generally not controlling, it may well help to focus counsel's attention as to what needs to be proved in order to merit relief.

Here, in one sentence in her brief Claimant requests that the "the Board's order affirming a dismissal of the reinstatement petition be reversed...." Claimant's brief at p. 14. However, it appears that Claimant was only seeking "reinstatement" of her benefits for the period of September 2, 1996 to March 13, 1997 and not thereafter. *See, e.g.,* Claimant's Petition for Review at ¶ 3A(4) filed in this court wherein she states "the WCJ failed to grant claimant's [reinstatement] petition **for the period during which defendant took a unilateral suspension.**" (emphasis added). However, as we note above, Claimant failed to produce any evidence before the factfinder that Employer did in fact unilaterally cease making payments, thus, there is no basis in the record for reversing the WCJ's denial of her request to "reinstate" her benefits for that period of time.