# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Clavin,                             :
                    Petitioner            :
                                          :
            v.                            :   No. 139 C.D. 2016
                                          :   Submitted: July 15, 2016
Workers' Compensation Appeal              :
Board (Oliver Sprinkler Company, Inc.),   :
                    Respondent            :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 6, 2016**

David Clavin (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) order denying his penalty petition. The WCJ determined Claimant did not meet his burden of showing Oliver Sprinkler Company, Inc. (Employer) refused to pay for causally related medical treatment because the WCJ rejected Claimant's medical expert's opinion relating Claimant's 2013 treatment to his July 2008 work injury. Claimant contends the WCJ erred in determining Employer's unilateral refusal to pay for the 2013 surgery did not require an award of penalties under Section 435 of the Workers' Compensation Act[1] (Act). Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §991.

## I. Background

In July 2008, Claimant sustained a work-related right shoulder injury. In August 2008, Employer issued a medical-only notice of compensation payable (NCP), which described the injury as a right shoulder contusion. In October 2008, Claimant sustained a second work injury, which Employer acknowledged in a medical-only NCP as a groin strain.

Thereafter, Claimant filed claim petitions for both work injuries. With respect to the October 2008 groin injury, Claimant filed a penalty petition alleging Employer violated the Act by issuing a medical-only NCP. In response, Employer filed termination petitions alleging Claimant fully recovered from both injuries. In a January 2012 decision, WCJ Bonnie B. Callahan (First WCJ) granted Claimant's claim petition for a right shoulder injury in the nature of adhesive capsulitis (frozen shoulder), but suspended benefits as of the date of the July 2008 work injury. First WCJ also granted Claimant's claim petition for a right groin strain and awarded Claimant total disability benefits at the weekly rate of $807 beginning in November 2008. First WCJ also granted Claimant's penalty petition and awarded a 20% penalty on the amount of outstanding compensation. First WCJ denied Employer's termination petitions.

At issue in the current case is payment for shoulder surgery undertaken by Claimant in February 2013, almost seven years after the July 2008 work injury, and after the decision by First WCJ, which described the injury as adhesive capsulitis.

2

In August 2013, First WCJ approved a compromise and release (C&R) agreement between the parties describing Claimant's accepted July 2008 work injury as adhesive capsulitis. The C&R agreement provided for a lump sum payment of $35,000 for indemnity benefits related only to the right shoulder injury. Pursuant to the C&R agreement, Employer agreed to pay Claimant's work-related medical bills, considered reasonable and necessary, incurred up to August 20, 2013.

In November 2013, Claimant filed a penalty petition alleging Employer violated the Act by failing to pay for Claimant's February 2013 shoulder surgery. Employer filed an answer denying Claimant's material allegations and challenging whether the shoulder surgery was causally related to the 2008 work injury. The Bureau of Workers' Compensation assigned this penalty petition to WCJ Karen Wertheimer (Second WCJ).

In support of his petition, Claimant submitted a February 2014 report from Dr. Seth D. Krum (Claimant's Physician), a board-certified orthopedic surgeon. Claimant's Physician first examined Claimant in January 2011 for symptoms related to his July 2008 work injury. See Second WCJ's Op., 10/30/14, Finding of Fact (F.F.) No. 3. An MRI following the injury confirmed a partial tear of the rotator cuff. Id. Claimant's Physician stated he was unsure if the work injury caused the tear or made it symptomatic. Id. Claimant's symptoms persisted, and he developed adhesive capsulitis. Id.

3

Claimant's Physician also examined Claimant in February 2011, March 2011 and August 2012. Id. Claimant still complained of persistent pain. Id. Although Claimant believed he was making progress, Physician felt Claimant regressed. Id. A December 2012 MRI revealed a proximal biceps rupture and full thickness tear of the supraspinatus with some retraction. Id. In February 2013, Claimant's Physician performed right shoulder surgery, which included extensive glenohumeral and subacromial debridements with acromioplasty and mini-repair of the rotator cuff. Id. In sum, Claimant's Physician concluded Claimant sustained some injury to his right rotator cuff as a result of the July 2008 work injury, and the right rotator cuff tearing progressed. Id. This necessitated the February 2013 surgery and related physical therapy. Id.

Second WCJ also recognized that First WCJ's January 2012 decision, admitted into evidence as Exhibit D-2, made findings of fact and conclusions of law regarding Claimant's Physician's prior deposition testimony. In his May 2011 deposition, admitted in the present case as Exhibit D-1, Claimant's Physician testified that his official diagnosis of Claimant's right shoulder work injury was adhesive capsulitis, also called frozen shoulder. See Dep. of Dr. Krum, 5/20/11 (Krum Dep.), at 11-12, Reproduced Record (R.R.) at 75-76. On cross-examination, Claimant's Physician confirmed that his official diagnosis was adhesive capsulitis, or frozen shoulder. Krum Dep. at 18; R.R. at 82.

However, Claimant's Physician testified that Claimant's rotator cuff tear was not causally related to his work injury. Krum Dep. at 18-19; R.R. at 82-

4

83. Specifically, Claimant's Physician explained, "he has some rotator cuff disease, or tendinopathy, but I don't think that is related to this injury." Id.

In the present case, Employer also presented medical reports from two other physicians, Dr. Donald F. Leatherwood and Dr. Craig Ross. See F.F. Nos. 6, 7. Both physicians opined that Claimant's rotator cuff surgery was not work related. F.F. Nos. 6, 7. Ultimately, Second WCJ assigned minimum weight to the reports of Dr. Leatherwood and Dr. Ross. F.F. No. 9.

However, Second WCJ also found that Claimant's Physician did not resolve the discrepancy between his 2011 testimony and his 2014 report regarding the causal relationship between Claimant's 2008 right shoulder injury and his rotator cuff tear. F.F. No. 9. In 2011, Claimant's Physician testified he did not think Claimant's rotator cuff disease was related to his work injury. Id. However, in his 2014 report, Claimant's Physician related Claimant's rotator cuff disease to his July 2008 work injury. Id. Nonetheless, in rejecting Claimant's Physician's 2014 opinion as to causation, Second WCJ found, "[t]here is no explanation for the change of opinion, and without that, the undersigned has no choice but to reject his opinion." Id. Second WCJ also found "[t]he fact that there was a 17 month gap in treatment also lends credence to the possibility that there was some other intervening factor that affected the rotator cuff disease." Id.

For these reasons, the Second WCJ determined that Claimant failed to establish that his 2013 surgery and related physical therapy were causally related to his July 2008 work injury. F.F. No. 11; Concl. of Law No. 2.

5

Claimant appealed, and the Board affirmed, noting Second WCJ adequately explained her reasons for not crediting Claimant's Physician's 2014 report. Claimant petitions for review.[2]

## II. Discussion

### A. Argument

Claimant contends Second WCJ's refusal to impose penalties in this case constitutes reversible error. First, Claimant asserts Employer's unilateral refusal to pay for his 2013 surgery and related physical therapy costs, which total approximately $65,000, circumvented the Act's utilization review procedures. Pet'r's Br. at 7. Once it is determined an employer is liable for an injury under the Act, the employer is required to pay a claimant's medical bills within 30 days of receipt. Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver), 823 A.2d 209 (Pa. Cmwlth. 2003). Any disputes as to the reasonableness or necessity of treatment must be resolved through the utilization review process under Section 306(f.1)(6) of the Act, 77 P.S. §531(6). Westinghouse Elec.

Further, Claimant posits, the Act does not give an employer the right to self-help by permitting the employer to unilaterally refuse to pay benefits. City of Phila. v. Workers' Comp Appeal Bd. (Sherlock), 934 A.2d 156 (Pa. Cmwlth. 2007). Nonetheless, Claimant acknowledges, an employer that questions causation may escape liability for penalties for non-payment of medical bills if a WCJ later

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

6

determines that the medical bills at issue were not causally related to the work injury. Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.), 659 A.2d 45 (Pa. Cmwlth. 1995). However, this Court also reasoned in Listino that if an employer unilaterally ceases to pay medical costs based on an alleged lack of causation and the WCJ determines the medical bills to be work-related, the employer assumes the risk of penalties under the Act. Id.

Here, Claimant asserts, the record reflects he sustained no prior or intervening injuries, other than the July 2008 work injury, which could account for his right shoulder injury and rotator cuff tear. Moreover, Claimant's Physician testified in his May 2011 deposition that a report from a September 2008 MRI indicated Claimant had supraspinatus tendinopathy or some partial tearing and that there was fluid within the subacromial bursa. Krum Dep. at 8; R.R. at 72. Claimant's Physician gave Claimant an injection in the subacromial space for his rotator cuff condition. Krum Dep. at 14; R.R. at 78.

Claimant argues his Physician's February 2014 report also recognized that the MRI following his work injury confirmed a partial tear of the rotator cuff. See Report of Dr. Krum, 2/23/14 (Krum Report) at 1; R.R. at 61. Claimant's partial tear continued to worsen, which resulted in his Physician's request for an MRI in February 2011. This MRI revealed tendinopathy and a partial thickness tearing of the supraspinatus. Krum Report at 2; R.R. at 62.

Thereafter, a December 2012 MRI revealed Claimant had a proximal biceps rupture and a full thickness tear of the supraspinatus with some retraction.

7

Krum Report at 2; R.R. at 62. In January 2013, Claimant's Physician re-evaluated Claimant and recommended operative intervention. Id. On February 5, 2013, Claimant's Physician performed an arthroscopic examination of the right shoulder, extensive glenohumeral and subacromial debridements with acromioplasty, and *a mini-open repair of the rotator cuff*. Id. Following surgery, Claimant progressed well with physical therapy modalities. Id.

Summarizing, Claimant asserts Claimant's Physician found a partial rotator cuff tear in early 2011 in an MRI taken shortly after Claimant's injury. However, Claimant's more immediate and pressing condition was adhesive capsulitis. Nonetheless, Claimant's Physician initially treated Claimant's rotator cuff tear with injections. After realizing that conservative treatment did not help Claimant to recover, Claimant's Physician ordered a December 2012 MRI, which revealed a full thickness tear. Claimant's Physician then performed arthroscopic surgery and rotator cuff repair. Ultimately, Claimant's Physician opined, within a reasonable degree of medical certainty, that Claimant did sustain an injury to his rotator cuff as a result of the July 2008 work injury. Krum Report at 2; R.R. at 62. In short, Claimant's shoulder symptoms persisted and his right rotator cuff tearing progressed, necessitating the 2013 surgery. Krum Report at 2-3; R.R. at 62-63.

Claimant therefore contends the evidence demonstrates his 2013 surgery was causally related to his July 2008 work injury. Claimant argues that the WCJ's contrary determination and failure to impose penalties constituted an abuse of discretion and reversible error.

8

**B. Analysis**

Pursuant to Section 435(d) of the Act, 77 P.S. §991(d), a WCJ is authorized to impose penalties for violations of the Act. Westinghouse Elec. The assessment of penalties, and the amount of penalties, is discretionary. Id. Absent an abuse of discretion by the WCJ, we will not overturn the denial or grant of a penalty on appeal. Id.

In a penalty petition, the claimant bears the initial burden of presenting evidence sufficient to establish a violation of the Act. Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n), 745 A.2d 1282 (Pa. Cmwlth. 2000). If the claimant fails to meet this burden, the penalty petition must be denied. Sanders v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n), 756 A.2d 129 (Pa. Cmwlth. 2000).

As discussed above, the Act requires an employer to pay for reasonable and necessary medical expenses that are causally related to the work injury. Listino. However, if the claimant's medical expenses are not related to a work injury, the employer is not required to pay for them and is not subject to a penalty for nonpayment. Id. To that end, if the WCJ determines the medical bills submitted by the claimant in support of his penalty petition are not work-related, it is proper for the WCJ to dismiss the penalty petition. Buchanan v. Workmen's Comp. Appeal Bd. (Mifflin Cnty. Sch. Dist.), 648 A.2d 99 (Pa. Cmwlth. 1994).

Also, in workers' compensation cases, the WCJ is the ultimate fact-finder and has exclusive province over questions of credibility and evidentiary

weight.  A&J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013).  The WCJ may accept the testimony of any witness, including a medical witness, in whole or in part.  Id.  We are bound by the WCJ's credibility determinations.  Id.

Moreover, it is irrelevant whether the record contains evidence that supports findings other than those made by the WCJ; the crucial inquiry is whether the evidence supports the findings actually made.  Id.  Therefore, we must examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings.  Id.  If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence.  Id.  Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence.  Wagner v. Workers' Comp. Appeal Bd. (Anthony Wagner Auto Repairs & Sales, Inc.), 45 A.3d 461 (Pa. Cmwlth. 2012).

Here, Second WCJ specifically found Claimant's 2013 surgery and related physical therapy were not causally related to Claimant's right shoulder work injury, described in the applicable NCP and in First WCJ's decision, as "adhesive capsulitis."  Second WCJ Op., F.F. Nos. 1, 11.  In support of her decision, Second WCJ noted Claimant's Physician's acknowledgement in his 2011 deposition that Claimant had some rotator cuff disease or tendinopathy, but he did not think it was related to Claimant's work injury.  F.F. No. 5; Krum Dep. at 18-19; R.R. at 82-83.

10

Nonetheless, Second WCJ acknowledged that Claimant's Physician later opined in his 2014 report that Claimant did sustain some injury to his right rotator cuff as a result of his July 2008 work injury, and that the right rotator cuff tearing progressed and resulted in the need for the 2013 surgery. F.F. No. 3. However, Second WCJ rejected Claimant's Physician's 2014 report opinions as not credible because the doctor did not adequately explain the reasons for changing his opinion. F.F. No. 9.

Here, on appeal, Claimant argues his Physician indicated in his 2011 deposition that Claimant sustained a work-related partial rotator cuff tear, but considered Claimant's adhesive capsulitis to be the more immediate and pressing condition. We disagree with Claimant's interpretation of the evidence. To the contrary, Claimant's Physician stated he did not think Claimant's rotator cuff disease or tendinopathy was causally related to his work injury. Krum Dep. at 17-18; R.R. at 82-83. In addition, Claimant's Physician does not explain in his 2014 report why he changed his opinions as to causation and now considered Claimant's rotator cuff tear related to his 2008 work injury. These inconsistencies provide an objective basis for Second WCJ's credibility determinations. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006).

In short, Second WCJ rejected Claimant's Physician's revised opinion that Claimant's right rotator cuff tear, which he found to be non-work-related in 2011, to now be work-related. As noted, Second WCJ, as fact-finder, is free to

11

accept or reject the testimony of any medical witness, in whole or in part. <u>A&J Builders</u>. Further, matters of credibility and evidentiary weight are within the WCJ's sole discretion. <u>Id.</u> Viewing the record in a light most favorable to Employer as the prevailing party, we see no abuse of discretion in Second WCJ's denial of Claimant's penalty petition.[3] <u>Westinghouse Elec.</u>, <u>Sanders</u>, <u>Shuster</u>.

For the above reasons, we affirm the Board's order upholding Second WCJ's order denial of Claimant's penalty petition.

_____
ROBERT SIMPSON, Judge

---

[3] We also note that even if Second WCJ found Claimant's right rotator cuff tear to be work-related, this would not *mandate* the imposition of penalties. <u>Delarosa v. Workers' Comp. Appeal Bd. (Masonic Homes)</u>, 934 A.2d 165 (Pa. Cmwlth. 2007). To the contrary, the imposition of penalties would still fall within Second WCJ's discretion. <u>Id.</u>

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Clavin,             :
            Petitioner     :
                        :
       v.                :    No. 139 C.D. 2016
                        :
Workers' Compensation Appeal   :
Board (Oliver Sprinkler Company, Inc.), :
           Respondent   :

## **O R D E R**

**AND NOW**, this 6th day of October, 2016, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

_____
ROBERT SIMPSON, Judge