# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristie L. Horner,         :
                        :
              Petitioner   :
                        :
           v.            : No. 967 C.D. 2018
                        : Submitted: November 30, 2018
Unemployment Compensation  :
Board of Review,        :
                        :
           Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED: June 19, 2019

Kristie L. Horner (Claimant) petitions for review of the May 17, 2018 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's determination and held that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge from work for willful misconduct connected to her work.

While the Law does not define the term willful misconduct, our courts have defined it as: an act of wanton or willful disregard for the employer's interests; a deliberate violation of the employer's rules; disregard for standards of behavior which the employer can rightfully expect **(Footnote continued on next page…)**

Claimant was employed by the Westmoreland County Commissioners (Employer) full-time as a 911 telecommunicator from January 9, 2017, until January 9, 2018. Finding of Fact (F.F.) No. 1. Claimant lives and owns property in Johnstown, Pennsylvania. F.F. Nos. 2, 9. As a condition of employment, Claimant agreed to relocate to Westmoreland County within 180 days of hire and maintain County residence throughout her employment.[2] F.F. No. 3.

Claimant had difficulty finding suitable housing in Westmoreland County because of her credit score, the financial difficulty of maintaining two residences, and the challenge in finding a rental property that accepted large dogs. F.F. No. 8. Upon realizing that a credit score would be required to rent an apartment, Claimant stopped applying for housing that required providing a credit

**(continued…)**

of an employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014).

[2] Claimant signed a residency statement on January 18, 2017, which stated:

> I, [Claimant], acknowledge and understand that in accepting a position with Westmoreland County, I am subject to the Residency Requirement of Westmoreland County. Under the Residency Requirement, employees who are not County residents must move into Westmoreland County *within 180 days of hire* and must remain a Westmoreland County resident throughout their employment with the County. I understand that failure to become a Westmoreland County resident during said 180 days period shall result in my termination from employment with Westmoreland County.

Certified Record (C.R.) Item No. 3, p. 6 (emphasis added).

score.  F.F. No. 11.  Claimant did not advertise her Johnstown property for sale or rent as was her stated intention at the time of hire.  F.F. No. 10.

Claimant did not move to Westmoreland County within 180 days of hire.  F.F. No. 4.  Employer granted Claimant an extension to secure County residence by November 11, 2017, but Claimant did not relocate to Westmoreland County within that time.  F.F. No. 5.  On December 15, 2017, Employer granted Claimant a second extension with notice that her failure to comply with the residency requirement by January 9, 2018, would result in her termination.[3]  F.F. No. 6.  Employer discharged Claimant on January 9, 2018, for failing to relocate to Westmoreland County in compliance with Employer's residency requirement.  F.F. Nos. 7, 12.

The local service center determined that Claimant was not ineligible for unemployment compensation benefits under Section 402(e) of the Law. Employer appealed and a hearing was held before the referee.

At the March 29, 2018 hearing, Amanda Bernard, Employer's director of human resources, testified that Claimant was discharged for failing to move to Westmoreland County, as was required by Employer's policy.  Notes of Testimony, March 29, 2018, (N.T.) at 6.  Ms. Bernard said that Claimant was

---

[3] The residency statement addendum provided:

> On January 18, 2017, you voluntarily signed the attached Residency Statement agreeing to relocate into Westmoreland County within 180 days of your hire date.  As you are aware, you failed to comply with the County policy.  A second deadline of January 9, 2018 has been established.  If you do not meet the residency requirement by that date, your employment with Westmoreland County will be terminated.

C.R. Item No. 3, Appendix 8, p. 17.

aware of Employer's residency requirement at the time of hire. *Id.* Ms. Bernard explained that the residency requirement was provided as a condition of employment in all of Employer's job postings and that each employee signed a residency statement during orientation. *Id.* Ms. Bernard stated that Employer does not recognize permanent and temporary employment positions. N.T. at 18. She testified that while trainees are not eligible for union benefits, they are otherwise considered to be full-time employees. N.T. at 18, 19. Ms. Bernard said that Employer's residency requirement is uniformly enforced and is calculated from 180 days of the employee's start date. N.T. at 7, 18.

Claimant testified that she never received clarification of whether the 180-day residency compliance deadline was calculated by her initial date of hire or the date that she completed her training and became a permanent employee. N.T. at 9. Claimant stated that she attempted to clarify the triggering calculation date with both her union representative, Carrie Wallace, and Employer's chief of operations, Tim Halland, but neither could confirm which date was used to calculate the 180 days. N.T. at 9.

Claimant stated that she began her employment as a trainee and was told that her training would be divided into two sessions: a four- to six-week classroom training session at a pay rate of $12.80 an hour; and a six- to eight-week mentor training session at a pay rate of $13.10 an hour, during which her work hours would be limited to 76 hours per pay period. N.T. at 10, 14. Claimant testified that the actual duration of both training sessions was nearly twice as long as she expected: the classroom training session lasted 16 weeks and the mentor training session occurred over 12 weeks. N.T. at 14. Claimant testified that she worked at a lower rate of pay for longer than she had initially planned, which

4

contributed to her inability to find suitable housing. N.T. at 14. Claimant said that she did not begin making $18.53 an hour until late July 2017, when she became a permanent employee. N.T. at 10.

Claimant testified that before she applied to work with Employer, she searched apartment rentals and discovered several suitable and affordable housing possibilities. N.T. at 13. Claimant also said that after beginning her job with Employer, she consulted coworkers for housing recommendations as well. N.T. at 13. However, Claimant said that because she had never rented an apartment, she was not aware that a credit check would be required with rental applications. N.T. at 13.

Claimant acknowledged that while owning a large dog made it difficult to find affordable housing, her greatest challenge in finding County residence was her financial situation. N.T. at 11. Claimant indicated that she had poor credit and had recently filed for bankruptcy. N.T. at 11. Claimant stated that while receiving her trainee's salary, she did not apply for housing because she knew that her credit check would ultimately fail. N.T. at 11, 12. Additionally, she stated that because of her commute, her car required repairs which cost additional money. N.T. at 10. Claimant stated that she had considered listing her Johnstown property for sale or rent but acknowledged that she never did. N.T. at 13. Claimant said she could not sell or rent her home until she found another place to live. *Id.*

Claimant testified that after receiving notice that her failure to relocate to Westmoreland County by January 9, 2018, would result in her termination, she asked Employer if there were any actions she could take to maintain her employment. N.T. at 8. Claimant stated that in order to resolve her residency

5

problems, she made several phone calls within Employer's departments before making contact with both Ms. Bernard and Mr. Halland. N.T. at 7-8. According to Claimant, Employer said that Claimant had already been granted an extension to comply with its residency requirement and would not be afforded any further recourse. N.T. at 8.

Ms. Wallace testified that she spoke with Mr. Halland after December 15, 2017, when he threw the residency statement addendum, which was not on official letterhead, to Claimant and ordered her to sign it. N.T. at 16. Ms. Wallace stated that she requested an extension of time to comply with Employer's residency requirement on Claimant's behalf, but she was told by Mr. Halland that the situation was out of Employer's hands. N.T. at 16. According to Ms. Wallace, Mr. Halland told her that Employer did not want to lose Claimant because she was a great employee and explained that if Claimant moved to Westmoreland County, she could return to her job with Employer. N.T. at 16. Ms. Wallace testified that she sought clarification on the date used to calculate the 180-day residency compliance deadline, but "[n]o one knew." N.T. at 16.

In an April 16, 2018 decision, the referee determined that Claimant was aware at the time of her hire that relocating her residence to Westmoreland County was a condition of employment. The referee noted that Employer doubled its 180-day compliance policy to afford Claimant an entire year to secure suitable County residence. The referee found that Employer satisfied its burden of showing that Claimant violated its work policy. The referee concluded that Claimant failed to show that she made good faith efforts to relocate to Westmoreland County and thus failed to demonstrate good cause for violating Employer's policy. The referee reversed the local service center's determination and held that Claimant was

6

ineligible for unemployment compensation benefits under Section 402(e) of the Law.

Claimant appealed to the Board, arguing that she was unable to find suitable housing in Westmoreland County because she made less money as a trainee than as a permanent employee and that her training period was twice as long as she had expected.[4]  Claimant asserted that she could not afford rent or a security deposit for most apartments during her training phase and could only realistically search for housing once she became a permanent employee.  Claimant argued that she was unaware that the 180-day residency requirement was calculated from her date of hire.  Claimant maintained that she should have been permitted to locate suitable and affordable County residency housing until January 18, 2018, which was 180 days from the initiation of her permanent employment status.

By its May 17, 2018 decision, the Board adopted the referee's findings of fact and conclusions of law.  The Board found that because Claimant was aware of the residency requirement, she also should have been aware that the 180 days would be calculated from her date of hire, especially because this information was provided on the residency statement signed by all employees upon hire.  The Board determined that Claimant failed to demonstrate good cause for waiting five months after being hired in January 2017, to begin looking for housing in Westmoreland County.

---

[4] Claimant also disagreed with Ms. Bernard's testimony that Employer did not have "temporary" or "permanent" employees, and argued that she was hired as a "temporary trainee telecommunication officer."  Claimant's Brief at 7.

7

The Board noted that although Claimant admitted that she did not apply for housing that involved credit checks, she had not shown that such applications would have been futile. The Board emphasized that Claimant was afforded two deadline extensions. The Board noted that Claimant began receiving an increased salary on July 23, 2017, and expressly rejected her testimony that between then and January 9, 2018, she was unable to find suitable and affordable housing.[5] The Board concluded that Claimant did not have good cause for failing to relocate to Westmoreland County within 180 days of hire or before Employer's second extension of January 9, 2018. Accordingly, the Board affirmed the referee's decision that Claimant was ineligible for benefits under Section 402(e) of the Law.

On appeal to this Court,[6] Claimant essentially repeats and elaborates on her testimony before the referee.[7] We construe Claimant's arguments before

---

[5] In unemployment compensation cases, the Board, as factfinder, is empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

[6] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987). The Board's findings are binding and conclusive on appeal if the record, when examined as a whole, is supported by substantial evidence. *Halloran v. Unemployment Compensation Board of Review*, 188 A.3d 592, 597 (Pa. Cmwlth. 2018). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

8

this Court to aver that the Board's finding that Claimant failed to establish good cause under Section 402(e) of the Law is not supported by substantial evidence.

Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show the existence of a reasonable work rule and the claimant's violation of the rule. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Once the employer meets its burden, the burden then shifts to the claimant to establish good cause for her conduct. *Metropolitan Edison Company v. Unemployment Compensation Board of Review*, 606 A.2d 955, 957 (Pa. Cmwlth. 1992).

This Court has previously held that a violation of a residency ordinance can constitute willful misconduct. *See, e.g.*, *City of Greensburg v. Unemployment Compensation Board of Review*, 590 A.2d 388, 389 (Pa. Cmwlth. 1991) (holding that when an employee is advised that a residency requirement will be strictly enforced, even when it had not been enforced previously, violation of such policy, without good cause, constitutes willful misconduct); *Rodgers v. Unemployment Compensation Board of Review*, 397 A.2d 1286, 1288 (Pa. Cmwlth. 1979) (holding that the claimant's maintenance of a residence outside of the city of Philadelphia constituted willful misconduct of the employer's residency requirement). Here, Ms. Bernard's testimony established the existence of Employer's policy, and Claimant acknowledges that she did not secure housing in

---

**(continued…)**

[7] To the extent Claimant's brief sets forth facts for the first time, we note that our review is limited to facts of record. *Sanders v. Workers' Compensation Appeal Board (Marriott Corporation)*, 756 A.2d 129, 133 (Pa. Cmwlth. 2000) (finding that briefs are not part of the record and this Court may not consider facts outside of the record).

Westmoreland County as required by Employer.[8] Therefore, substantial evidence exists to support the Board's findings that Claimant violated Employer's established work policy by failing to relocate to Westmoreland County within the deadlines provided.

In *Graham v. Unemployment Compensation Board of Review*, 840 A.2d 1054 (Pa. Cmwlth. 2004), we addressed whether a claimant exercised good faith efforts to comply with an employer's directive to relocate. The employer's written employment agreement did not include a relocation requirement, but the claimant was aware at the start of his employment that he was expected to move from Indiana, Pennsylvania, to State College, Pennsylvania as soon as practicable. The employer discharged the claimant for not devoting enough time to the job, largely in part for his failure to relocate. The local service center found the claimant ineligible for benefits and the claimant appealed to the referee. The claimant testified that his greatest obstacle in moving was his inability to sell his house. However, the claimant presented no evidence that he made good faith efforts to sell his house. In fact, he admitted that he took his house off the market. While the claimant and his spouse made two trips to State College to look for a suitable residence, the claimant never made an offer on a home there.

The referee reversed the local service center's determination and found that the claimant was not ineligible for benefits. The Board reversed, holding that the claimant was aware he was expected to move and failed to demonstrate that he made a good faith effort to sell his Indiana house and purchase

---

[8] If a residency requirement is not uniformly enforced, termination pursuant to that requirement may not constitute willful misconduct. *City of Beaver Falls v. Unemployment Compensation Board of Review*, 441 A.2d 510, 512 (Pa. Cmwlth. 1982). Claimant does not argue that Employer's policy was unreasonable or disparately enforced amongst the employees.

a home in State College. Consequently, the Board concluded that he did not establish good cause for failing to comply with the employer's reasonable directive to relocate. On appeal, we affirmed the Board's decision, concluding that the claimant's failure to relocate to State College constituted willful misconduct, rendering him ineligible for unemployment compensation benefits under Section 402(e) of the Law.

Like the claimant in *Graham*, Claimant was aware of Employer's residency requirement when she accepted her job. The residency statement that Claimant signed during orientation afforded her notice of the need to relocate to Westmoreland County within 180 days *of hire*. Similarly, Claimant also received explicit notice on December 15, 2017, that her failure to secure housing within Westmoreland County by January 9, 2018, would result in her termination.

Although, Claimant began receiving her regular salary later than she expected, she still had from July 23, 2017, until January 8, 2018, over five months, to locate a suitable residence in Westmoreland County. Claimant contends that she was unable to find affordable housing for herself and her large dog, but she admittedly did not attempt to rent or sell her Johnstown home. Employer granted her two deadline extensions to comply with Employer's residency requirement, which afforded Claimant a total of 360 days, double that provided by Employer's initial 180-day deadline. Because the Board rejected Claimant's testimony that she was unable to relocate her residence within that timeframe, the Board concluded that she did not establish good cause for failing to comply with Employer's residency requirement.

11

Accordingly, we affirm the Board's determination that Claimant is ineligible for unemployment compensation benefits under Section 402(e) of the Law.


_____
MICHAEL H. WOJCIK, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristie L. Horner,          :
                             :
           Petitioner    :
                             :
          v.                : No. 967 C.D. 2018
                             :
Unemployment Compensation    :
Board of Review,         :
                             :
         Respondent :

## O R D E R

AND NOW, this <u>19</u>th day of <u>June</u>, 2019, the order of the Unemployment Compensation Board of Review, dated May 17, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristie L. Horner, : 
        Petitioner : 
  : 
    v. : No. 967 C.D. 2018
  : Submitted: November 30, 2018
Unemployment Compensation Board : 
of Review, : 
        Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: June 19, 2019

Respectfully, I dissent. Kristie L. Horner (Claimant) had knowledge of her employer's residency policy and did not comply. However, there has not been a determination that her conduct in this regard was intentional and deliberate, which is necessary to a legal conclusion that she committed willful misconduct. I would vacate and remand for the Board to determine whether Claimant intentionally defied her employer's residency requirement or acted with mere neglect.

Claimant worked as a 911 Telecommunicator for Westmoreland County (County) when she was discharged for not complying with the County's job requirement that she reside within the County. When Claimant started her employment at the County in January 2017, she was classified as a temporary trainee, which lasted 16 weeks and paid $12.80 per hour. This was followed by 12 more weeks of training, during which she earned $13.10 an hour. In July of 2017,

upon successfully completing her training, Claimant's probation ended. She began earning $18.53 an hour.

Claimant testified that she tried to find an apartment in the County. She pursued a number of rental advertisements and reached out to co-workers for help. Some rental agents did not respond. Others responded that their rental properties had pet restrictions, which would not allow Claimant to keep her two dogs. Because of her past financial difficulties, Claimant had a low credit score, which also impeded her search for a rental.

When an employer discharges an employee for a work rule violation, the employer has the burden of showing the rule's existence, its reasonableness, and its violation. *Patnesky v. Unemployment Compensation Board of Review*, 200 A.3d 107, 112 (Pa. Cmwlth. 2018). The employer must also show that the claimant's violation of the work rule was intentional and deliberate. *Cambria County Transit Authority ("CamTran") v. Unemployment Compensation Board of Review*, 201 A.3d 941, 950 (Pa. Cmwlth. 2019). *See also Miller v. Unemployment Compensation Board of Review*, 415 A.2d 454 (Pa. Cmwlth. 1980) (because referee did not find whether claimant's conduct was deliberate, intentional, or incompetent, this Court could not determine whether claimant's conduct constituted willful misconduct). This Court has explained:

> Requiring an employer to show that its employee deliberately or intentionally violated a work rule before the employee is found ineligible for [unemployment compensation] benefits is consistent with the [Unemployment Compensation] Law's[1] remedial purpose, which mandates that the "'disqualification provisions, such as Section 402(e), [43 P.S. §802(e),] should be narrowly construed and a claimant must not be denied

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-918.10.

MHL-2

compensation unless he is unequivocally excluded by the plain language of these provisions.'" *Diehl v. Unemployment Compensation Board of Review,* [57 A.3d 1209, 1217 (Pa. 2012)] (quoting *Penflex, Inc. v. Bryson,* [485 A.2d 359, 365 (Pa. 1984)]).

*Durand v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1129 C.D. 2013, filed February 7, 2014), slip op. at 10 (unreported).[2] If the employer meets its burden, the burden shifts to the claimant to show good cause for the conduct.[3] *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015).

The Board adopted the Referee's findings that the County required its employees to live in Westmoreland County; that Claimant did not move into Westmoreland County; and that Claimant received two extensions to comply with the residency policy. *See* Referee Decision, 3/30/2018, Findings of Fact Nos. 3-7; C.R. Item No. 12. Based on these findings, the Board concluded that Claimant's failure to relocate to Westmoreland County constituted willful misconduct. However, the Board did not determine that Claimant acted intentionally and deliberately.[4] *See Eshbach v. Unemployment Compensation Board of Review*, 855

---

[2] Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

[3] "'Good cause' is established when a claimant's actions are justified or reasonable under the circumstances." *Klampfer v. Unemployment Compensation Board of Review*, 182 A.3d 495, 502 (Pa. Cmwlth. 2018).

[4] In the adjudication, the Board stated that Claimant did not show "good cause" for violating the residency rule, explaining, in part, that it did not "credit [Claimant's] testimony that … [she] was unable to locate suitable housing in Westmoreland County that was within her budget and that would accept her large dog[.]" Board Adjudication, 5/17/2018, at 2; C.R. Item No. 14. The good cause inquiry is only appropriate after it is held that Claimant's misconduct was willful and not negligent. "[W]illful misconduct requires a certain state of mind." *Durand*, slip op. at 10. That state of mind is whether the violation was deliberate and intentional. *Id.* The Board found that Claimant "had difficulty finding a suitable residence because of her credit score, the financial

MHL-3

A.2d 943, 947 n.6 (Pa. Cmwlth. 2004) (willful misconduct includes "consciousness of wrongdoing on the part of the employee"). Instead, the Board assumed that a violation of a policy *per se* constitutes willful misconduct. This was error.

Employer compares this case to *Graham v. Unemployment Compensation Board of Review*, 840 A.2d 1054 (Pa. Cmwlth. 2004), wherein this Court affirmed the Board's decision that the claimant's failure to relocate constituted willful misconduct, rendering him ineligible for benefits. However, in *Graham*, the Board specifically found that the claimant's conduct was *deliberate*. *Id.* at 1059. In *City of Greensburg v. Unemployment Compensation Board of Review*, 590 A.2d 388 (Pa. Cmwlth. 1991), the claimant was in full compliance with her municipal employer's residency policy until she took the affirmative step of moving outside the city in spite of being warned against doing so. In *Rodgers v. Unemployment Compensation Board of Review*, 397 A.2d 1286 (Pa. Cmwlth. 1979), the claimant was also in compliance with the residency policy until she decided to violate it by moving outside the city. This Court held that the claimant's "conduct amounted to a deliberate violation of the [city]'s rule[.]" *Id.* at 1288. Indeed, it takes a deliberate and concerted effort to move one's home to a new location.

Here, Claimant did not leave an existing residence in Westmoreland County; rather, she did not succeed in making a move into the County. I would vacate the Board's adjudication and remand for a finding of whether Claimant's violation of the residency policy was intentional and deliberate.

> _____
> MARY HANNAH LEAVITT, President Judge

---

difficulty of maintaining two residences, and the difficulty in finding a rental property that accepts large dogs." Referee Decision at 2, Finding of Fact No. 8; C.R. Item No. 12. The Board must determine, taking into consideration Claimant's financial and situational difficulties, whether her actions in not complying with Employer's residency policy were intentional and deliberate.