A & J BUILDERS, INC. and State Workers' Insurance Fund, Petitioners

v.

WORKERS' COMPENSATION APPEAL BOARD (VERDI), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 23, 2013.

Decided Oct. 16, 2013.

G. Michael Spates, Pittsburgh, for petitioners.

Patrick R. Vitullo, Plymouth Meeting, for respondent Anthony Verdi.

BEFORE: PELLEGRINI, President Judge, SIMPSON, Judge and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

In this workers' compensation appeal dealing with cumulative trauma and several employers, A & J Builders, Inc. and the State Workers' Insurance Fund (collectively, A & J) ask whether the Workers' Compensation Appeal Board (Board) erred in affirming a Workers' Compensation Judge's (WCJ) decision granting Anthony Verdi's (Claimant) claim petition. A & J contends the WCJ erred in determining Claimant provided timely notice of a work injury pursuant to Section 311 of the Workers' Compensation Act (Act).[1] Additionally, A & J argues the WCJ's determination that Claimant's aggravation injury occurred while working for A & J as opposed to Claimant's last-in-time employer,

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 631.

J.D. Miller Construction Company (J.D. Miller), is not supported by substantial evidence and does not meet the standard of a reasoned decision. Upon review, we affirm.

## I. Factual and Procedural Background

Claimant is a commercial drywall carpenter by trade. For the last 10 years of his 33 years in the trade, Claimant obtained employment through his union hall, and he worked for various employers. Of relevance here, Claimant worked for A & J from August 2004 until September 25, 2007, and for J.D. Miller for three days until his final day of employment on October 6, 2008.

In June 2009, Claimant filed a claim petition against J.D. Miller alleging that, on October 6, 2008 (his last day of work for J.D. Miller), he sustained a repetitive trauma injury to his right knee during the course and scope of his employment. J.D. Miller denied the averments of the claim petition.

On July 10, 2009, Claimant filed a second claim petition against A & J alleging that, on September 25, 2007 (his last day of work for A & J), he sustained a repetitive trauma injury to his right knee during the course and scope of his employment with A & J. Claimant sought ongoing total disability benefits from October 6, 2008.

A & J denied all material allegations in the claim petition. A & J also filed joinder petitions against numerous alleged employers of Claimant. These other employers filed timely and responsive answers denying the averments in the joinder petitions. Hearings before a WCJ on *all* petitions ensued.

In support of his claim petition, Claimant testified his primary job duties as a union carpenter included climbing up and down scaffolding and carrying and installing commercial drywall panels, which are 12 feet wide and weigh 108 pounds. In 2004, Claimant injured his right knee while working for Heartwood Construction, for which he underwent surgery with Michael Ciccotti, M.D.

After surgery, Claimant returned to work without restrictions. In August 2004, Claimant began working for A & J and continued to work there for three-and-a-half years. Claimant performed his regular duties of installing commercial drywall. Claimant testified these duties caused his right knee pain to return. Some days, he could barely climb the scaffold.

In 2006, while working for A & J, Claimant began treating with Peter Vitanzo, M.D. for right knee pain. Claimant did not know for sure whether there was a relationship between his work duties and his knee pain, and his doctor did not tell him there was a relationship.

By the time he stopped working for A & J, Claimant "always" had right knee pain. WCJ Op., 3/24/11, Finding of Fact (F.F.) No. 1(d). In October 2007, Claimant told Dr. Vitanzo that squatting, kneeling and going up and down increased his pain.

Subsequently, Claimant worked for several other employers, the last of which was J.D. Miller. Claimant performed his usual drywall duties for J.D. Miller for three days. By his last day, Claimant's right knee filled with fluid and was "hard as a rock." F.F. No. 1(e). Claimant stopped working for J.D. Miller because the job was finished, and he was laid off. Claimant testified his pain did not go away after he stopped working. Instead, his right knee pain worsened, and he was unable to work.

In January 2009, Claimant began treating with Dennis P. McHugh, D.O. (Claimant's Physician) for his right knee. Claimant testified that, on March 31, 2009, his

Physician informed him, for the first time, that there was a causal connection between his right knee pain and his work as a carpenter. Claimant's knee remains sore and painful.

Claimant also presented the deposition testimony of his Physician, who is a board-certified orthopedic surgeon, and who began treating Claimant in January 2009. Claimant's Physician examined Claimant, obtained a history from hi m, and reviewed his medical records.

Claimant's Physician testified, according to Dr. Vitanzo's treatment notes, Claimant presented with right knee pain in 2006. Dr. Vitanzo advised Claimant that "if he squats or bends a certain way it does flare up a bit but I told him that is to be expected given his underlying arthritis." F.F. No. 2(b). Dr. Vitanzo's notes do not express further opinion regarding causation.

Based on his initial examination, Claimant's Physician opined that Claimant had crepitus in his right patellofemoral knee joint. A February 2009 MRI study of Claimant's right knee showed advancing arthritis underneath the knee cap.

On March 31, 2009, Claimant's Physician re-examined Claimant and diagnosed him with "chronic repetitive work-related chondral wear in the patellofemoral joint on his right knee," which is irreversible. F.F. No. 2(e). This was the first time Claimant's Physician informed Claimant there was a connection between his right knee condition and his work duties. As a result of this diagnosis, Claimant's Physician opined Claimant is disabled from working as a carpenter.

Claimant's Physician further opined Claimant's job duties of lifting drywall and climbing scaffolds for both A & J and J.D. Miller materially aggravated Claimant's underlying right knee condition. Because Claimant worked for A & J for more than three years, he sustained more chondral

damage to his right knee than during the brief time he worked for J.D. Miller.

In opposition, J.D. Miller presented the deposition testimony of John R. Duda, M.D. (Employer's Physician), who is also a board-certified orthopedic surgeon, and who examined Claimant on one occasion. Employer's Physician took a history that, between 2006 and 2008, Claimant developed progressively increasing right knee pain while working as a carpenter. On examination, Claimant walked normally, performed a normal range of right knee motion, and showed no synovitis or effusion in his right knee. Claimant had subjective tenderness along his right medial joint line and a click bilaterally in his patellofemoral joint, meaning underneath the kneecap. According to Employer's Physician, the 2009 MRI showed wear and tear arthritis.

Employer's Physician opined Claimant suffers from routine age-related degenerative joint disease in his right knee. Claimant is experiencing a "typical" slow, gradual deterioration of his right knee function. F.F. No. 3(c). Claimant is disabled from working as a carpenter. However, his job duties have nothing to do with this deterioration.

Employer's Physician "agreed partially" with Claimant's Physician's opinion that Claimant's right knee symptoms were due to chronic, repetitive work-related chondral wear in the patellofemoral joint. F.F. No. 3(d). He opined Claimant's work could have caused his right knee symptoms and it was "conceivable" that Claimant "may have sustained a sprain or strain to the knee superimposed on pre-existing degenerative disease." F.F. No. 3(d). However, Claimant's right knee arthritis did not cause Claimant to stop work at J.D. Miller. The three days that Claimant worked for J.D. Miller did not substantial-

ly contribute to the development of Claimant's right knee arthritis.

Ultimately, the WCJ credited the testimony of Claimant in its entirety. Additionally, the WCJ found Claimant's Physician's testimony credible for the most part. Specifically, the WCJ credited Claimant's Physician's testimony that Claimant's work duties as a carpenter for A & J materially aggravated Claimant's underlying knee condition and ultimately caused Claimant to be disabled and unable to perform his duties as a carpenter. However, the WCJ rejected his testimony insofar as he attributed some of the cause to J.D. Miller.

Additionally, the WCJ credited Employer's Physician's testimony to the extent he opined the performance of Claimant's work duties for J.D. Miller did not materially aggravate Claimant's condition. However, the WCJ rejected his testimony in all other respects.

Based on these findings, the WCJ concluded Claimant met his burden of proof against A & J but not against J.D. Miller.[2] The WCJ also determined Claimant satisfied the notice provision of Section 311 by filing the claim petition against A & J within 120 days from when he knew or should have known that his right knee condition was related to his employment as a commercial carpenter with A & J. Additionally, the WCJ determined A & J failed to meet its burden of proof in connection with the joinder petitions. Thus, the WCJ granted Claimant's claim petition against A & J.

A & J appealed to the Board, which affirmed. This appeal followed.[3]

---

**2.** The WCJ dismissed the claim petition filed against J.D. Miller.

**3.** Our review is limited to determining whether the WCJ's findings of fact were supported

## II. Issues

On appeal, A & J contends the WCJ erred in determining Claimant provided timely notice where Claimant did not give notice of his cumulative trauma injury within 120 days of his last day of employment and did not exercise reasonable diligence to toll the running of this statutory period. Additionally, A & J argues the WCJ erred by assigning liability for Claimant's injury to A & J as opposed to Claimant's last-in-time employer, J.D. Miller.

## III. Discussion

 The WCJ, as the ultimate factfinder in workers' compensation cases, "has exclusive province over questions of credibility and evidentiary weight...." *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab)*, 15 A.3d 944, 949 (Pa.Cmwlth.2010). The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating Inc.)*, 873 A.2d 25 (Pa.Cmwlth.2005). The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.* We are bound by the WCJ's credibility determinations. *Id.*

 Moreover, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Id.* at 29 (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. *Id.* If the record contains such

by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa.Cmwlth.2011).

evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.* Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *Wagner v. Workers' Comp. Appeal Bd. (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461 (Pa.Cmwlth.2012).

## A. Notice

 First, A & J contends the WCJ erred in determining Claimant provided timely notice. Where a claimant alleges a cumulative trauma injury, Section 311's 120–day period begins to run on the last day of aggravation, which is normally the claimant's last day of work. Here, Claimant's last day of work for A & J was on September 25, 2007, and for J.D. Miller was on October 6, 2008. However, Claimant did not file his claim petition against A & J until July 10, 2009—well beyond the 120–day statutory period.

Moreover, A & J maintains, Claimant did not prove he exercised "reasonable diligence" in providing "notice" of a work injury to his employer under Section 311 of the Act. Claimant knew or should have known that his right knee condition was related to work as early as 2006 while working for A & J. Claimant acknowledged his work duties for A & J caused his right knee pain to return. Claimant also testified his right knee became filled with fluid while performing similar duties for J.D. Miller.

 The claimant bears the burden of establishing he gave the employer timely notice of the injury. *City of Phila. v. Workers' Comp. Appeal Bd. (Williams)*, 578 Pa. 207, 851 A.2d 838 (2004). The question of the timeliness of that notice is generally one of fact. *Id.* As a result, where the WCJ determines a claimant gave an employer timely notice, we must determine whether substantial evidence supports that finding. *Carrier Coal Enters. v. Workmen's Comp. Appeal Bd. (Balla)*, 118 Pa.Cmwlth. 201, 544 A.2d 1111 (1988).

Section 311 of the Act sets forth the time limitation on notice of injury to the employer and when the time for giving notice begins to run. Specifically, Section 311 provides, in relevant part:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf … shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, *unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.* However, in cases of injury resulting from ionizing radiation *or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment …*

77 P.S. § 631 (emphasis added).

In interpreting Section 311's notice provision, our Supreme Court explained:

> Section [311]'s 120–day notice period, however, is not absolute; [Section 311] includes the 'discovery rule.' Thus, in the same way that the discovery rule tolls a statute of limitations in a medical malpractice case, the *120–day notice period of [Section 311] does not begin to run in cases in which the nature of the injury or its causal connection to work is not known, until an employee knows or by the exercise of reasonable diligence, has reason to know of the injury*

*and its possible relationship to [his] employment.*

*Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 565 Pa. 114, 123–24, 771 A.2d 1246, 1251 (2001) (citations omitted) (emphasis added). In other words, the notice period begins to run when the injury occurs, unless tolled by the discovery rule. *See id.* "[T]he discovery rule, as incorporated by the legislature in [Section 311], calls for more than an employee's suspicion, intuition or belief; by its terms, the statute's notice period is triggered only by an employee's knowledge that [he] is injured and that [his] injury is possibly related to [his] job." *Id.* at 126, 771 A.2d at 1253.

Nevertheless, the "'reasonable diligence' mentioned in Section 311 'is an objective, rather than a subjective standard.'" *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Holmes)*, 998 A.2d 1030, 1034 (Pa.Cmwlth.2010) (quoting *Sell*, 565 Pa. at 124, 771 A.2d at 1251). As we explained, "[t]he elements of knowledge a claimant must possess in order to trigger the running of the notice period are: '(1) knowledge or constructive knowledge (2) of disability (3) which exists, (4) which results from an occupational disease [or injury], and (5) which has a possible relationship to the employment.'" *Id.* at 1034 (citation omitted).

For example, in Sell, the claimant gave notice to her employer after she obtained a medical opinion connecting her emphysema to her exposure to formaldehyde at work. The claimant presented evidence as to when she first knew of the connection. It was then possible to determine that she gave notice within 120 days of gaining that knowledge. Thus, we determined the notice she provided was timely.

Conversely, in *Allegheny Ludlum*, we determined the notice was not timely. There, the credited evidence indicated the claimant noticed a connection between her left foot injury and her work duties as early as 1994—two decades before notifying her employer. Additionally, the claimant's treating doctors (including one doctor who continuously treated the claimant since 1994) opined the claimant's condition was caused by work. Given the length of the claimant's treatment, her association of symptoms with work, and the causation opinions of her treating doctors, we determined the claimant did not exercise reasonable diligence to discover whether there was a causal connection between her work duties and her injury. Consequently, the 120–day notice period began to run on the claimant's last day of work in June 2003. Because the claimant did not give notice to the employer until February 2004, we held the notice was untimely pursuant to Section 311.

Relying on *Williams*, A & J maintains notice must be provided within 120 days from the last day of work for cumulative trauma injuries, such as the one involved here. In *Williams*, the WCJ determined the claimant knew or should have known of her injury and its work-relatedness in January 1996. However, the injury did not become disabling until her last day of work in March 1997. The dispute centered on when the 120–day notice period began to run, where the claimant suffers daily aggravation of her diagnosed condition, which becomes disabling only on her last day of employment.

The Supreme Court recognized "it is relatively easy to fix the date of an injury where it results from a single traumatic event ... [b]ut, in other instances, including that of work-related, cumulative trauma injuries, the question of fixing the notice date is not so easy." *Williams*, 578 Pa. at 219, 851 A.2d at 845. The Court ultimately held, "[i]n the instance of a cumulative trauma, where credited medical evidence shows that each day of work causes an aggravation or new injury, the

120–day notice period begins to run on the last day a work-related aggravation injury is suffered, which will *usually* be the last day of work." *Id.* at 209, 851 A.2d at 839 (emphasis added). Thus, the Court concluded the notice provided within 120 days of the claimant's last day of work was timely.

The critical facts in this case are the reverse of those in *Williams,* because in *Williams* the claimant knew of work-relatedness before her last day of work. In contrast, here Claimant's last day of work with A & J occurred before he knew of work-relatedness. We confirm the WCJ's decision here to begin the running of the notice period from the latter of those events (knowledge/constructive knowledge; last day of cumulative trauma). The decision is consistent with the result in *Williams,* where the notice period began to run from the latter of the two events.

Here, unlike in *Williams,* the WCJ found Claimant did not know for sure whether there was a relationship between his work duties and his knee pain until his Physician informed him of the causal connection on March 31, 2009. F.F. Nos. 1(g), 2(e). The WCJ's findings are supported by the credible testimony offered by Claimant and his Physician. Claimant repeatedly testified he did not know for sure there was a relationship between his work duties and knee pain until his Physician first informed him of such on March 31, 2009. Reproduced Record (R.R.) at 114a–115a, 117a–118a, 134a, 142a, 409a. Claimant's Physician corroborated this testimony. R.R. at 235a. Additionally, Claimant's Physician testified there was no indication as to causation in any of Claimant's prior medical records. R.R. at 236a.

Nevertheless, A & J maintains Claimant should have known of the connection between his right knee condition and work as early as 2006 had he exercised reasonable diligence. A & J points to the WCJ's findings and Claimant's testimony that Claimant's work duties for A & J made his right knee pain return in 2006. F.F. No. 1(c); R.R. at 133a. Claimant described this knee pain as "horrible." F.F. No. 1(c); R.R. at 422a, 542a–43a. Claimant also testified his right knee "filled up with fluid" and became "hard as a rock" after he spent the day installing drywall for J.D. Miller in October 2008. F.F. No. 1(e), R.R. at 114a.

We reject this constructive knowledge argument. Although Claimant complained of right knee pain and suspected his condition could be related to work, he credibly testified he did not know his disability resulted from an occupational injury until his Physician informed him of the connection on March 31, 2009. The WCJ specifically credited this testimony. A & J's challenge amounts to little more than an attack on the WCJ's credibility determinations, which we will not entertain. *See Minicozzi.*

Moreover, unlike the situation in *Allegheny Ludlum,* where the claimant's treating doctors opined her condition was caused by her work, Dr. Vitanzo, with whom Claimant treated while working for A & J, did not make such a connection. R.R. at 134a, 236a. According to Claimant's Physician, Dr. Vitanzo attributed Claimant's problems to underlying arthritis. F.F. No. 2(b); R.R. at 246a. So although Claimant may have suspected a possible relationship between his knee condition and employment, he did not possess the requisite knowledge until his Physician diagnosed him with chronic repetitive work-related chondral wear in the patellofemoral joint on his right knee in March 2009. *See* Sell (notice period is triggered only by a claimant's knowledge); *Allegheny Ludlum* (a claimant must possess knowledge or constructive knowledge that disability results from an occupational in-

jury). Under the circumstances here, Claimant exercised reasonable diligence.

In short, the WCJ's determination that Claimant provided A & J timely notice of his work injury is supported by substantial, competent evidence. After Claimant became aware of the work-related connection, he filed his claim petition against A & J on July 10, 2009, within 120 days of March 31, 2009. Thus, Claimant's notice of the injury to A & J is timely under Section 311 of the Act.

### B. Assignment of Liability

Next, A & J argues the WCJ erred by assigning liability for Claimant's cumulative trauma, right knee injury to A & J as opposed to Claimant's last-in-time employer, J.D. Miller. The WCJ's finding that Claimant did not aggravate his right knee while working for J.D. Miller is not supported by substantial competent evidence, particularly in light of other findings made by the WCJ. Specifically, the WCJ found Claimant's knee filled with fluid and became hard as a rock while working for J.D. Miller. Moreover, A & J argues the WCJ's decision does not satisfy the reasoned decision requirements of the Act.

In addition to proving timely notice, a claimant must also prove he suffered a work-related injury in the course and scope of his employment causing a loss of earning power. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993); *Morrison v. Workers' Comp. Appeal Bd. (Rothman Inst.)*, 15 A.3d 93 (Pa.Cmwlth.2010). Where the causal connection between the work incident and alleged disability is not obvious, unequivocal medical evidence is necessary to establish it. *Sw. Airlines/Cambridge Integrated Serv. v. Workers' Comp. Appeal Bd. (King)*, 985 A.2d 280 (Pa.Cmwlth.2009).

Where an intervening incident materially contributes to the renewed physical disability, a claimant experiences a new injury or aggravation. *S. Abington Twp. v. Workers' Comp. Appeal Bd. (Becker & ITT Specialty Risk Servs.)*, 831 A.2d 175 (Pa.Cmwlth.2003). An aggravation of a pre-existing condition is deemed a new injury, thereby rendering the employer at the time the aggravation occurred responsible for all medical and wage loss benefits arising from the new injury. *Id.*

Here, the WCJ determined Claimant sustained his burden of proving a causal relationship between his injury and the performance of his duties for A & J. Claimant testified his right knee pain returned while working for A & J. R.R. 405a. Claimant periodically missed work because of the pain. *Id.* Claimant struggled to do his job for A & J. *Id.* at 406a–407a.

Claimant's Physician diagnosed Claimant with chronic repetitive work-related chondral wear in the patellofemoral joint of the right knee. *Id.* at 235a, 239a. He opined Claimant was disabled as a carpenter because of his knee condition. *Id.* at 238a, 242a. He unequivocally testified Claimant's right knee condition was connected to his work duties. *Id.* at 235a, 264a.

Additionally, Claimant's Physician testified Claimant's work at both A & J and J.D. Miller materially aggravated his underlying knee condition. *Id.* at 240a. Claimant's Physician opined Claimant sustained more chondral damage to his right knee during his time working for A & J. *Id.* at 241 a.

To the extent Claimant's Physician determined his activities during his brief employment with J.D. Miller materially aggravated his knee, the WCJ rejected this testimony. F.F. No. 8. Instead, the WCJ relied on Employer's Physician's testimony insofar as he opined that Claimant's work

duties with J.D. Miller did not materially aggravate his right knee condition. F.F. No. 9.

A & J argues the WCJ cannot rely on this portion of Employer's Physician's testimony because the doctor did not think *any* of Claimant's job duties for A & J or J.D. Miller contributed to his injury, regardless of the duration of employment. A & J also points to Claimant's testimony admitting he experienced knee problems while working for J.D. Miller. R.R. at 114a.

However, the WCJ was free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *See Minicozzi.* Although Claimant admitted his knee filled with fluid while working for J.D. Miller, he testified his knee problems started before working for J.D. Miller, and he did not experience any traumatic incident while working there. R.R. at 132a. Based on our review, the WCJ's findings are supported by substantial evidence. We reject A & J's assertions to the contrary.

■ Furthermore, we reject A & J's contention that the WCJ's decision does not satisfy the "reasoned decision" requirement contained in Section 422(a) of the Act, 77 P.S. § 834. To satisfy the reasoned decision requirements of Section 422(a) of the Act, 77 P.S. § 834, a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.),* 574 Pa. 61, 828 A.2d 1043 (2003); *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.),* 893 A.2d 191 (Pa. Cmwlth.2006). When conflicting evidence is presented, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Daniels.* The WCJ may not reject uncontroverted evidence without reason or for an irrational reason, but must identify such evidence and explain adequately the reasons for its rejection. *Id.* "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." *Dorsey,* 893 A.2d at 196 (citation omitted).

■ "Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." *Id.* at 194. To allow effective appellate review, the WCJ must articulate an objective basis for the credibility determination. *Id.* at 194–95. Although there are countless objective factors that may support a credibility determination, these factors must be identified and enunciated. *Id.*

"However, Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Id.* at 195. "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Id.*

Here, the medical experts testified by way of deposition. The WCJ credited Claimant's Physician's opinion that the performance of Claimant's work duties for A & J from August 2004 to September 2007 materially aggravated Claimant's right knee condition to the point where Claimant could no longer perform his carpenter duties. However, the WCJ rejected Claimant's Physician's opinion to the extent he opined the three days Claimant worked for J.D. Miller in October 2008 also materially aggravated his right knee condition. The WCJ explained:

> The aforesaid credible portion of [Claimant's Physician]'s testimony is corroborated by his clinical findings on his three examinations of the Claimant, the relevant medical, surgical and diagnostic records and reports that he reviewed, the credible testimony of the Claimant

and [the Physician]'s expertise as a board certified orthopedic surgeon. Further the doctor credibly explained that the patellofemoral joint is specifically designed as a biomechanical fulcrum of a lever arm which one uses or wears out when one is trying to do heavy exertional things like kneeling, squatting, going up and down stairs, up and down ladders, lifting and maintaining heavy objects.... In rejecting the aforesaid portion of [Claimant's Physician]'s testimony it is noted that [he] failed to explain to the satisfaction of this Judge how the Claimant's work activities during the mere three days that the Claimant worked for J.D. Miller caused a material aggravation to the Claimant's underlying right knee condition as opposed to temporarily increasing his symptoms.

F.F. No. 8.

The WCJ credited Employer's Physician's opinion only to the extent his testimony supports a finding that the work duties that Claimant performed for J.D. Miller "did not cause, aggravate or accelerate the arthritic condition of the Claimant's right knee." F.F. No. 9. Otherwise, the WCJ rejected his opinion that Claimant's performance of his work duties for A & J did not materially aggravate his right knee condition or cause Claimant's current disability. F.F. No. 9.

In rejecting Employer's Physician's testimony, the WCJ explained Employer's Physician examined Claimant only once and did not participate in the treatment of Claimant's work injury. F.F. Nos. 9(a)-(b). Additionally, the WCJ noted his testimony conflicted with the testimonies of Claimant and Claimant's Physician. F.F. No. 9(d). Furthermore, the WCJ reasoned Employer's Physician "unconvincingly testified that the very hard work which the Claimant performed as a commercial carpenter for [A & J] had nothing to do with the Claimant's arthritic knee," yet agreed Claimant should probably not return to work as a commercial carpenter. F.F. No. 9(c).

Our careful review reveals the WCJ issued a reasoned decision in accordance with Section 422(a) of the Act. The WCJ properly considered the evidence before him, made all necessary findings and conclusions, and clearly articulated his reasons for accepting and rejecting the testimony. The WCJ could credit in part and reject in part the opinions of Claimant's Physician and Employer's Physician opinion on these objective bases. *See Daniels*, 574 Pa. at 78, 828 A.2d at 1053 (noting a WCJ may reject the testimony of an expert on the objective basis that the expert had less interaction with the subject). A & J's argument to the contrary invites this Court to reconsider the WCJ's determinations on matters of credibility and evidentiary weight, which we may not do. *Minicozzi*. Thus, contrary to A & J's assertion, the WCJ decision is reasoned. As such, we reject A & J's contention on this point.

For these reasons, we conclude the WCJ properly granted Claimant's claim petition against A & J. Accordingly, we affirm the order of the Board.

### ORDER

**AND NOW,** this 16th day of October, 2013, the order of the Workers' Compensation Appeal Board is **AFFIRMED.**