IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Messina,                          :
                          Petitioner     :
                                         :
           v.                            :  No. 1111 C.D. 2017
                                         :  Submitted:  December 15, 2017
Workers' Compensation Appeal             :
Board (City of Philadelphia),            :
                          Respondent     :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: January 8, 2018


        Joseph Messina (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's Review Petition to add cervical injuries to the description of his work injury and denying his Petition for Review of Utilization Review Determination (UR Petition) regarding treatment provided by Dr. Saied Talaie (Dr. Talaie) as of November 11, 2014.  For the reasons that follow, we affirm.

**I.**

Claimant was employed by the City of Philadelphia (Employer) as crew chief in the vacant lot department. On August 26, 2011, he sustained an injury while operating a mower. Employer then issued a Notice of Compensation Payable (NCP) recognizing that Claimant suffered a work-related strain/sprain of the right shoulder and right elbow.

Over three years later, in November 2014, Claimant filed a Review Petition[1] seeking to expand the description of his work injury to incorporate a cervical injury, including disc herniations at multiple levels. Employer filed an Answer denying all material averments in the Review Petition.[2] Employer also

---

[1] Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771, allows a WCJ to amend an NCP that is incorrect in some material aspect. That section provides, in relevant part, as follows:

> A workers' compensation judge of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

*Id.* The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect. *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 856 n.4 (Pa. Cmwlth. 2011).

[2] Claimant also filed a separate Review Petition seeking to amend the description of his work injury to include psychological injuries and a Penalty Petition alleging that Employer failed to pay all reasonable and necessary medical bills. The WCJ granted those petitions and they are not at issue on appeal.

requested Utilization Review (UR) alleging that a surgical procedure performed on Claimant's right elbow was unreasonable and unnecessary.[3]    Claimant

[3] Section 306(f.1)(1)(i) of the Act obligates the employer to pay "for reasonable surgical and medical services, services rendered by physicians or other health care providers . . . medicines and supplies, as and when needed."  77 P.S. § 531(1)(i).   Section 306(f.1)(6) of the Act, 77 P.S. § 531(6), sets forth the procedure to be followed regarding disputes as to the reasonableness or necessity of treatment by a health care provider, stating that:

> (i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer.  The department shall authorize utilization review organizations to perform utilization review under this act.  Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review.  Organizations not authorized by the department may not engage in such utilization review.

> (ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

> (iii) The employer or the insurer shall pay the cost of the utilization review.

> (iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report.  The department shall assign the petition to a workers' compensation judge for a hearing or for an informal conference under section 402.1.  The utilization review report shall be part of the record before the workers' compensation judge.  The workers' compensation judge shall consider the utilization review report as evidence but shall not be bound by the report.

77 P.S. § 531(6)(i)-(iv).  "[A]n employer seeking to avoid payment for medical services in a UR proceeding has a never-shifting burden to prove that the treatments in question are unnecessary
**(Footnote continued on next page…)**

subsequently filed a UR Petition and the matters were consolidated for hearing and determination.

## II.

### A.

Before the WCJ, Claimant testified that on August 26, 2011, he was running a mower in a vacant lot with high weeds when it got stuck and when he tried to free it, he felt a shooting pain that went from the right side of his neck down his right shoulder to his elbow and hand. He also stated that after the incident, he started experiencing numbness in his right hand.

Claimant testified that he began treating for his right shoulder and elbow and underwent multiple surgeries on those areas between 2011 and 2014, but his symptoms persisted. He stated that he informed the doctors he saw during this time period that he was experiencing pain from the right side of his neck down to his fingers. He stated that none of those doctors ordered any tests on his neck until 2014 which he believed was because the doctors were dealing first with his elbow and then his shoulder before they would move on to something else like his neck. Claimant testified that the right side of his neck hurts every day; he uses a neck brace and hopes to see a neck specialist.

---

**(continued…)**

or are unreasonable." *Cruz v. Workers' Compensation Appeal Board (Philadelphia Club)*, 728 A.2d 413, 417 (Pa. Cmwlth. 1999).

4

Claimant also submitted the deposition testimony of Vincent E. Baldino, D.O. (Dr. Baldino), a board certified family practitioner who treated Claimant for his work injury from December 2011 through August 2014. Dr. Baldino testified that he was under the impression that Claimant's injuries were to his right shoulder and elbow, but that Claimant's records also showed that he complained at times of neck pain to other doctors beginning in 2012. After surgeries and treatment of Claimant's elbow and shoulder did not bring results, Dr. Baldino testified that in September 2013, he evaluated Claimant's neck and found paravertebral rigidity and reduced rotation to the right and ordered a cervical spine magnetic resonance imaging study (MRI). The MRI, conducted in July 2014, showed multilevel disc herniations, some of which were in contact with the spinal cord, including at the C6-7 level. He testified that he then ordered an electromyography (EMG), performed in September 2014, that showed evidence of a chronic C7-8 radiculopathy on the right which correlated with the MRI results and Claimant's symptoms. Dr. Baldino diagnosed Claimant with cervical disc herniations and radiculopathy and opined that these conditions were caused by the August 2011 work incident.

Regarding the UR Petition, Claimant presented Dr. Talaie's May 12, 2015 medical report which stated that he first saw Claimant on September 9, 2014, for complaints of weakness, pain, numbness and inability to use his right hand. He noted that his physical examination of Claimant showed that he was positive for a problem with the ulnar nerve, and this was consistent with the September 2014 EMG study that showed evidence of ulnar nerve entrapment at the right elbow and C7-8 radiculopathy. When Claimant's symptoms worsened, he stated that on

5

November 11, 2014, he performed a surgical re-exploration of the right elbow which showed massive very hard scar tissue compressing the ulnar nerve. Dr. Talaie released the ulnar nerve and transposed it to a different area. Dr. Talaie opined that Claimant's injuries are "work-related and aggravated," and that the surgery was reasonable and necessary treatment for Claimant's work injury.[4]

**B.**

In opposition, Employer presented the deposition testimony and medical report of Armando A. Mendez, M.D. (Dr. Mendez), a licensed physician Board certified in orthopedic surgery. Dr. Mendez testified that he performed an independent medical examination (IME) of Claimant on July 22, 2015, during which he obtained a history from Claimant of his work-related injury, surgeries and treatment. During that examination, Claimant told Dr. Mendez that he had not received any relief from his right upper extremity symptoms and characterized his pain as a 10 on a scale of 0 to 10. Dr. Mendez testified that his examination of Claimant's cervical spine revealed no objective abnormalities or evidence of radiculopathy. Claimant had full range of motion in his neck and a Spurling's test to detect compressed nerve roots was negative.

Dr. Mendez reviewed Claimant's medical records and noted a lack of any significant complaints or treatment of his cervical spine despite the fact that many doctors saw Claimant. He also found it significant that Claimant's cervical

---

[4] Claimant also testified that three months after Dr. Talaie performed the surgery, he continued to have severe pain from his elbow down to his fingers and had difficulty grasping things with his right hand.

MRI and EMG were not performed until 2014, three years after his work injury. Dr. Mendez testified that the MRI and EMG do not correlate with each other or with Claimant's symptoms or physical examination because the EMG indicates an abnormality at the C7-8 level, which is shown to be normal on the MRI. Dr. Mendez felt that Claimant's symptoms were attributable to an elbow problem, not his neck. Dr. Mendez found nothing to suggest that Claimant sustained his five minor neck herniations in one work incident in 2011 or that he had any cervical injury. Dr. Mendez explained that if Claimant had sustained multiple neck herniations in the work injury, his treating physicians would have identified them as a major problem from the beginning and they would not have been masked by his elbow and shoulder injuries.

Regarding the treatment provided by Dr. Talaie, Employer submitted the April 14, 2015 UR report of Francis Collini, M.D. (Dr. Collini). Dr. Collini's report stated that Claimant's records showed that he underwent surgeries to his right elbow in November 2011, February 2013 and March 2014, with the latter two surgeries being explorations of the ulnar nerve. Dr. Talaie began treating Claimant in September 2014 and diagnosed ulnar nerve compressive neuropathy at the elbow. Dr. Collini noted that Claimant's September 2014 EMG showed no evidence of significant brachial plexopathy, myopathy, peripheral neuropathy or nerve entrapment syndrome, but it did show a neuropraxic lesion of the ulnar nerve across the elbow.

Dr. Collini explained in his report that the appropriate treatment for Dr. Talaie's diagnosis of ulnar nerve compressive neuropathy is non-surgical

intervention for 8 to 12 months, including nonsteroidal anti-inflammatory medication, steroid injections, bracing/splinting and/or occupational therapy. Surgery is then recommended if the condition is not improved with these non-surgical treatments, the ulnar nerve is proven to be compressed by diagnostic studies and there is muscle wasting. Dr. Collini opined that the November 2014 surgery was not reasonable or necessary because Dr. Talaie did not first attempt 8 to 12 months of non-surgical intervention. Dr. Collini further opined that the presence of the neuropraxic lesion of the ulnar nerve was insufficient to justify a third exploratory surgery, especially since the first two surgeries were unsuccessful.

## III.

The WCJ denied both Petitions. With regard to the Review Petition, the WCJ found Claimant's testimony regarding his pain and disability to be largely credible. However, she did not find credible Claimant's testimony that he complained of neck pain immediately after his August 2011 work injury because this claim was not supported by his medical records and no doctor diagnosed or treated him for a neck injury until 2014. The WCJ found the testimony of Dr. Mendez to be more credible and persuasive than Dr. Baldino's because he is Board certified in orthopedic surgery, whereas Dr. Baldino is only certified in family practice. In addition, the WCJ noted that Dr. Mendez's opinions are supported by Claimant's normal cervical spine examination and the fact that the MRI and EMG studies do not correlate. Therefore, the WCJ found that Claimant's August 26, 2011 work injury did not include any cervical injuries and she denied Claimant's Review Petition.

8

As for the UR Petition, the WCJ found Dr. Collini to be more credible than Dr. Talaie and, therefore, found that Dr. Talaie's treatment was not reasonable or necessary.

Claimant appealed to the Board, arguing that the WCJ's decision is not well reasoned and not supported by sufficient competent evidence because the medical evidence overwhelmingly supports the fact that he suffered cervical injuries because of the August 26, 2011 work incident. He also argued that the WCJ erred in not finding him to be credible regarding his neck pain, in finding Dr. Mendez to be more credible than Claimant's treating physician, and in finding Dr. Talaie's November 11, 2014 surgery was not reasonable or necessary. The Board affirmed the decision of the WCJ and this appeal followed.[5]

## IV.

## A.

Regarding his Review Petition, Claimant argues the WCJ's finding that he did not sustain cervical injuries because of the August 26, 2011 work incident is not supported by the medical evidence. Claimant argues that he presented evidence that he felt pain down the right side of his neck at the time of

---

[5] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). Substantial evidence has been defined as "such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldemeer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

the injury, he continued to experience neck pain over the next several years and he complained of this neck pain to numerous physicians. According to Claimant, medical records reveal that his elbow injury was the most serious, requiring immediate attention, and the only logical view is that his providers had to focus on his elbow injury before addressing his other complaints. Claimant argues that the WCJ erred in not considering these facts and in denying his request to expand the description of his work injury to include cervical injuries.

Essentially, Claimant asks this Court to accept the evidence he presented and to overturn the credibility determinations of the WCJ. As we have stated over and over again, "[t]he WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). We are bound by these credibility determinations and cannot overturn them on appeal. "Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders, Inc.*, 78 A.3d at 1238.

Here, the WCJ gave an extensive summary of both medical experts' testimony and provided explanations as to why she found Dr. Mendez to be more credible and persuasive than Dr. Baldino. The WCJ found it significant that Dr. Mendez is Board certified in orthopedic surgery, and his opinions are supported by

the fact that Claimant's cervical spine examination was normal, there are no objective findings to support his claim regarding a cervical injury, and his MRI and EMG studies do not correlate. The WCJ did not find Claimant's assertions about his neck pain to be credible, especially since none of his doctors performed any testing on his neck until three years after the work incident. Moreover, there is no evidence in the record to support Claimant's theory that his doctors had to address his elbow injury before they could move on to his neck complaints.

There is ample evidence in the record to support the WCJ's findings with respect to the description of Claimant's injury, and we discern no error in the WCJ's determination that Claimant failed to meet his burden of proving that his 2011 work injury included cervical injuries.

**B.**

Claimant also argues that Dr. Talaie's November 11, 2014 surgery provided him with a measure of relief from his ongoing symptoms, and "treatment may be reasonable and necessary even if it is designed to manage the claimant's symptoms rather than cure or permanently improve the underlying condition." *Cruz v. Workers' Compensation Appeal Board (Philadelphia Club)*, 728 A.2d 413, 417 (Pa. Cmwlth. 1999).

Again, this comes down to a credibility determination. The WCJ accepted the findings in Dr. Collini's report, finding him to be more credible than Dr. Talaie. In his findings, Dr. Collini opined that surgery for Claimant's diagnosed elbow condition is only recommended if the condition has not improved

11

after 8 to 12 months of nonsurgical intervention, the ulnar nerve is proven to be compressed by diagnostic studies and there is muscle wasting. None of that occurred in this case. Moreover, the WCJ credited Dr. Collini's opinion that the presence of the neuropraxic lesion of the ulnar nerve was insufficient to justify a third exploratory surgery of Claimant's elbow, especially since the first two exploratory surgeries were unsuccessful.

Finally, Claimant's reliance upon *Cruz* is misplaced because there is no evidence that the surgery Dr. Talaie performed in November 2014 brought any relief of Claimant's symptoms. To the contrary, three months after the surgery, Claimant testified that he continued to have severe pain in his elbow, radiating down to his fingers, and had trouble grasping things. During his IME on July 22, 2015, Claimant told Dr. Mendez that he had not gotten any relief from his right upper extremity symptoms and his pain level was still at a 10 on a scale of 0 to 10. Given all of the above, we discern no error in the WCJ's denial of Claimant's UR Petition.

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Messina,                          :
                          Petitioner     :
                                         :
            v.                           : No. 1111 C.D. 2017
                                         :
Workers' Compensation Appeal             :
Board (City of Philadelphia),            :
                          Respondent     :


**O R D E R**


AND NOW, this 8<u>th</u> day of <u>January,</u> 2018, the order of the Workers'

Compensation Appeal Board dated July 12, 2017, at No. A16-0569, is affirmed.


_____

DAN PELLEGRINI, Senior Judge