# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Burkett,                    :
                                 :
                    Petitioner   :
                                 :
          v.                     : No. 41 C.D. 2022
                                 : Submitted: August 5, 2022
Jimi Enterprises, Inc. (Workers' :
Compensation Appeal Board),      :
                                 :
                    Respondent   :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: June 26, 2023


Mark Burkett (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) that granted Jimi Enterprises, Inc.'s (Employer) Petition to Modify Compensation Benefits (Modification Petition) based on an Impairment Rating Evaluation (IRE), and modified Claimant's indemnity benefits from total to partial disability. Claimant challenges as unconstitutional the retroactive application of Act 111 of 2018 (Act 111), which added Section 306(a.3) of the Workers' Compensation Act (Act),[1] altering the criteria for determining a claimant's disability status and providing that an impairment rating of less than 35% constitutes a partial

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. §511.3.

disability, and providing a credit for disability payments already made. Claimant maintains that Act 111 cannot be constitutionally applied to workers whose injuries occurred before October 24, 2018, the effective date of Act 111. We affirm.

The facts are not in dispute. On June 9, 2005, Claimant sustained a work-related injury in the nature of a neck strain while in the course and scope of his employment. Pursuant to an August 2, 2005 Notice of Compensation Payable, Employer paid Claimant more than 104 weeks of temporary total disability (TTD) benefits for the injury. In 2012, Employer had Claimant undergo an IRE under the former Section 306(a.2) of the Act,[2] which resulted in a WCJ decision granting a modification of Claimant's benefits to partial disability as of March 15, 2012. *See* Reproduced Record (RR) at 7a. Claimant did not appeal the WCJ's decision.

On June 28, 2017, Claimant filed a Petition to Review Compensation Benefits (Review Petition) seeking a change in his disability status from partial to total disability based on the Pennsylvania Supreme Court's opinion in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*).[3] Initially, TTD benefits were reinstated by the WCJ effective

---

[2] Added by the Act of June 24, 1996, P.L. 350, *formerly*, 77 P.S. §511.2, repealed by Act 111.

[3] As this Court has recently explained:

> On September 18, 2015, our Court issued a decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015), *aff'd in part, rev'd in part*, 161 A.3d 827 (Pa. 2017) (*Protz I*). In *Protz I*, we held that former Section 306(a.2) of the Act, which permitted IREs to be conducted based on "the most recent edition" of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides), was an impermissible delegation of legislative authority in violation of the non-delegation doctrine in

**(Footnote continued on next page…)**

2

June 20, 2017, by a WCJ decision dated January 26, 2018. *See* RR at 53a-58a. However, Employer appealed and the matter was remanded to the WCJ by the Board by opinion and order mailed February 28, 2019. *See id.* at 111a-17a. On May 1, 2020, the WCJ issued another decision granting Claimant's Review Petition and Claimant's disability status remained at total disability effective June 20, 2017. *See id.* at 147a-51a.[4]

While the foregoing Board appeal was pending, on January 8, 2020, Claimant submitted to an IRE performed by Jeffrey Moldovan, D.O. Thereafter, on October 26, 2020, Employer filed the instant Modification Petition seeking to reduce Claimant's status to partial disability based on Dr. Moldovan's determination following the IRE that "Claimant's whole-person impairment is less than 35%." RR

---

[article II, section 1 of] the Pennsylvania Constitution[, Pa. Const. art. II, §1]. In *Protz I*, we remanded to the Board to apply the Fourth Edition of the AMA Guides, which was the version of the AMA Guides in effect at the time the IRE provisions were enacted. *Protz I*, 124 A.3d at 416-17. On June 20, 2017, our Supreme Court issued *Protz II*, in which it agreed with our Court that the legislature unconstitutionally delegated its lawmaking authority when it enacted former Section 306(a.2) of the Act. The Supreme Court further determined, however, that the violative language of former Section 306(a.2) of the Act could not be severed from the rest of that section, and it struck the entirety of former Section 306(a.2) from the Act. *Protz II*, 161 A.3d at 841. Following *Protz II*, the legislature enacted new provisions of the Act, which require IREs to be performed using the AMA Guides, Sixth Edition (second printing April 2009). *See* Section 306(a.3) of the Act, 77 P.S. §511.3.

*City of Philadelphia v. Yeager (Workers' Compensation Appeal Board)* (Pa. Cmwlth., Nos. 709 C.D. 2021, 736 C.D. 2021, 739 C.D. 2021, filed August 4, 2022), *appeal denied*, 292 A.3d 848 (Pa. 2023), slip op. at 7 (footnote omitted).

[4] Employer discontinued its appeal of the WCJ's decision to the Board. *See* RR at 185a.

at 187a.[5]   At a hearing before the WCJ on its Modification Petition, Employer submitted into the record Dr. Moldovan's report and testimony, which the WCJ

[5] Section 306(a.3)(1), (2), and (7) of the Act states:

> (1) When an employe has received total disability compensation . . . for a period of [104] weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury, if any.  The degree of impairment shall be determined based upon an evaluation by a physician who is . . . chosen by agreement of the parties, or as designated by the [D]epartment, pursuant to the [AMA Guides], 6th [E]dition (second printing April 2009).
>
> (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides], 6th [E]dition (second printing April 2009), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits. . . .  If such determination results in an impairment rating less than [35%] impairment under the [AMA Guides], 6th [E]dition (second printing April 2009), the employe shall then receive partial disability benefits . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.
>
> * * *
>
> (7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur.  In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides], 6th [E]dition (second printing April 2009), for any injury or recurrence thereof.

77 P.S. §511.3(1), (2), and (7).

4

determined to be credible.[6] Specifically, Dr. Moldovan testified that, upon physical examination and review of Claimant's records, he determined that Claimant was at maximum medical improvement. In addition, Dr. Moldovan stated that he determined that Claimant sustained injuries in the nature of cervical sprain and strain, left elbow strain, and cubital tunnel syndrome, and that Claimant's impairment based on the charts in the AMA Guides, 6th Edition (second printing April 2009), were a 0% impairment rating as a whole person, and 0% for each body part, the neck, and the elbow. On cross-examination, Dr. Moldovan agreed that he assumed that an injury existed, and that he did not assess Claimant's condition for treatment or work capacity purposes. Dr. Moldovan conceded that his rating could differ if the injury diagnoses were different, and acknowledged that a prior doctor found an 8% rating on her evaluation several years earlier. *See* RR at 231a-32a. The WCJ also noted that "Claimant presented no contrary medical evidence," and "submitted and orally referred to a Motion to Dismiss, based on constitutional challenges.[7]" *Id.* at 232a.

---

[6] In workers' compensation cases, the WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight. *A&J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept the testimony of any witness, including a medical witness, in whole or in part. *Id.* We are bound by the WCJ's credibility determinations. *Id.*

[7] Specifically, Claimant argued that: "Act 111 is unconstitutional because it permits a retroactive application of the statute by permitting a credit for benefits which were received by [] Claimant prior to January 8, 2020"; his "receipt of 'prior partial disability benefits' which were categorized by a previous invalid IRE, as held by the Pennsylvania Supreme Court [in *Protz II*], violates the Pennsylvania Constitution (due process and due course of law rights)"; and Act 111 substantively "changed how disability benefits are determined and limits an injured worker to the receipt of no more than 500 weeks of future benefits," so that it "may only be applied prospectively, *i.e.*, after October 24, 2018, the effective date of Act 111" because it is "affecting a vested benefit." RR at 201a-02a.

5

Ultimately, the WCJ concluded that Employer "has met its burden of proof under its petition to establish that Claimant has less than a 35% rating for whole-person impairment under the AMA Guides, 6th Edition [(second printing April 2009)]," because "Claimant has 0[%] impairment, which is under the threshold for modification from total disability to partial disability." RR at 232a. As a result, the WCJ also concluded that "indemnity benefits are modified from total disability to partial disability status as of January 8, 2020, with a credit to [Employer] against the 500 weeks limit for partial disability benefits for prior periods of partial disability.[8]" *Id.* Accordingly, the WCJ issued an order granting Employer's Modification Petition; modified Claimant's benefits "to be partial in nature as of January 8, 2020"; and granted Employer "a credit for previous period of partial disability toward the 500 total weeks of partial disability entitlement." *Id.* at 233a.

On July 1, 2021, Claimant appealed the WCJ's decision to the Board, arguing that the WCJ erred in granting Employer's Modification Petition, and in granting Employer a credit for the weeks of Claimant's partial disability benefits that he received prior to the January 8, 2020 IRE, because they were paid pursuant to an

---

[8] Section 3(2) of Act 111 states:

> (2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.

77 P.S. §511.3, Historical and Statutory Notes.

6

IRE performed under the former unconstitutional Section 306(a.2) of the Act.[9]  The Board rejected Claimant's constitutional claims, and Claimant filed this appeal.

On appeal,[10] Claimant asserts that the Board erred in affirming the WCJ's decision because a retroactive application of *Protz II* invalidates the weeks of partial disability benefits paid under the unconstitutional 2013 IRE so that no weeks of partial disability benefits accrued so that they cannot be lawfully credited under Section 3(2) of Act 111.  Claimant also contends that his right to a remedy that was vested by *Protz II*, as guaranteed by the Remedies Clause of article I, section 11 of the Pennsylvania Constitution,[11] is violated by the credit provided for in Section 3(2).  We do not agree.

With respect to the retroactive application of the credit provisions of Section 3(1) and (2) of Act 111, this Court has previously observed:

---

[9] *See* RR at 249a ("[I]t is respectfully requested that th[e Board] reverse [the WCJ's] decision to grant [Employer's] Modification Petition, as it relates to permitting a credit for partial disability prior to October 24, 2018, and hold that as of January 8, 2020, Claimant has 500 weeks of available partial disability benefits.").

[10] As we have observed:

> Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).  As to questions of law, our standard of review is *de novo* and our scope of review is plenary.  *Pitt-Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

*Hender-Moody v. American Heritage Federal Credit Union (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 166 C.D. 2021, filed February 15, 2022), *appeal denied*, 284 A.3d 119 (Pa. 2022), slip op. at 3 n.3.

[11] Pa. Const. art. I, §11.  The Remedies Clause states:  "[E]very man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial, or delay."

7

The plain language of Section 3 establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) provides that an employer/insurer "shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph" for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation. [Section 306(a.3)(1) of the Act, 77 P.S. §511.3(1), former Section 306(a.2)(1) of the Act, 77 P.S. §511.2(1)]. Therefore, pursuant to Section 3(1), an employer/insurer will receive credit towards this 104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "[f]or the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [WC A]ct." Section 3(2) of Act 111. In short, any weeks of partial disability previously paid will count towards the 500-week cap on such benefits.

Accordingly, Section 3 of Act 111 does not evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect. Instead, it appears the General Assembly intended that employers and insurers that relied upon former Section 306(a.2) to their detriment by not pursuing other methods of a modification should not bear the entire burden of the provision being declared unconstitutional. Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid. However, for the benefit of claimants, the General Assembly also specifically reduced the impairment rating necessary for a claimant's status to be changed from 49% or lower to 34% or lower, making it more difficult for employers to change total disability status to partial disability status. That the General

8

Assembly used specific language to give retroactive effect to these carefully selected individual provisions does not make the entirety of Act 111 retroactive as the amendment lacks clear language to that effect.

*Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551, 561-62 (Pa. Cmwlth. 2020) (citation and footnote omitted).

Nevertheless, as in this case, the claimant in *DiPaolo v. UPMC Magee Women's Hospital (Workers' Compensation Appeal Board)*, 278 A.3d 430, 433-34 (Pa. Cmwlth. 2022), argued that "by permitting employers to use weeks of TTD accrued under the previous, unconstitutional IRE statute, Act 111's credit provisions violate the Pennsylvania Constitution's due process and due course of law principles [of the Remedies Clause] . . . ." Specifically, we noted that "at issue here is whether [the c]laimant has a vested right in the TTD status restored to her as of February 2016 after the *Protz* cases struck the prior IRE statute, but before the enactment of Act 111 in October 2018." *Id.* at 434-35.

In rejecting the claimant's Remedies Clause claim, we stated, in relevant part:

> This Court squarely addressed this question in *Pierson* [*v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Company, LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021)]. There, the claimant sustained a work-related injury in 2014. 252 A.3d at 1172. In light of the *Protz* cases, the claimant was not subject to an IRE and therefore was on TTD status until December 2018, when the employer sought an IRE after Act 111 became effective. *Id.* The IRE returned an impairment rating of 3% and the claimant's status was modified to [temporary partial disability (TPD)] as of the IRE date. *Id.* The claimant preserved due process and due course of law challenges to Act 111, which the WCJ and Board did not rule on, recognizing their jurisdictional limitations. *Id.* On the claimant's appeal to this Court, we rejected the claimant's

9

constitutional claims, holding that while a workers' compensation claimant does have a "certain right to benefits until such time as he is found to be ineligible for them," there are also "reasonable expectations under the Act that benefits may change." *Id.* at 1179. We explained that claimants did not "automatically lose anything by the enactment of Act 111," which "simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole-body impairment of less than 35%, after receiving 104 weeks of TTD benefits." *Id.* at 1179.

Following our decision in *Pierson*, this Court has consistently held that Act 111 does not abrogate or substantially impair a claimant's vested rights in workers' compensation benefits because there is no right to ongoing TTD status. *See, e.g.*, *Hutchinson v. Annville T*[*ownship*] *(Workers' Comp*[*ensation*] *Appeal B*[*oard*]), 260 A.3d 360, 367 (Pa. Cmwlth. 2021)[, *appeal denied*, 279 A.3d 1180 (Pa. 2022)] (relying on *Pierson* to dismiss claimant's constitutional claims against Act 111). In *Sochko v. National Express Transit Service (Workers' Compensation Appeal Board)* [(Pa. Cmwlth., No. 490 C.D. 2021, filed March 16, 2022)], we explained further:

> [E]ven during the time when the previous IRE provisions had been invalidated by the *Protz* cases but before Act 111 became effective, employers were not devoid of a means to modify a claimant's benefit status. Section 413(a) of the Act, which has been part of our workers' compensation legislation since its beginning over 100 years ago, has always provided employers (as well as claimants) with the general ability to seek a change in benefits at any time based on "proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. §772. Section 306(b) of the Act, which also has roots in the early decades of workers' compensation law, specifically enables

10

employers to modify a claimant's disability status from total to partial by showing that the claimant has regained some earning power. 77 P.S. §512(2). Since the 1996 onset of more cost-efficient IREs, employers were less likely to challenge a claimant's status via litigation, but the option was always available. Thus, while it is true that "a claimant retains a certain right to benefits until such time as he is found to be ineligible for them," claimants do not acquire a vested right in total disability status at any given time because that status has always been subject to potential litigation by employers

*Id.*, slip op. at 12-13 [] (citations omitted). Notably, the claimant is not without recourse, because Act 111 "specifically provides that a claimant placed in partial disability status based on an IRE may challenge the change in his or her status by either presenting a subsequent IRE reflecting a 35% or more impairment rating or establishing through litigation that his or her earning power has decreased." *Id.*, slip op. at 13 n.10 [] (citing 77 P.S. §511.3(3), (4)).

*DiPaolo*, 278 A.3d at 435-36 (citation to record and footnote omitted).[12] Likewise,

we rely on the rationale of the foregoing authority that has continually and

---

[12] *See also DiPaolo*, 278 A.3d at 438, wherein we noted:

[The c]laimant's assertions rest on the proposition that when our Supreme Court struck the previous IRE provisions in *Protz* [*II*], that provision was void *ab initio*, as though it had never been enacted in 1996, and any claimant who underwent an IRE prior to the *Protz* decisions was automatically restored to pre-IRE status. However, our courts have never held that to be the case, and several decisions have placed temporal limits on the application of *Protz II*. . . . Thus, contrary to [the c]laimant's assertions, we have never held that any IRE preceding the *Protz* cases was automatically erased in its entirety, including the weeks of benefits paid by employers for claims arising prior to Act 111.

**(Footnote continued on next page…)**

11

consistently rejected claims such as those raised by Claimant herein to invalidate a credit for the partial disability benefits paid under Section 3(2) of Act 111.

   Accordingly, the Board's order is affirmed.

<br>

                         _____

                         MICHAEL H. WOJCIK, Judge

---

(Citations omitted.)

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Burkett,                          :
                                       :
                    Petitioner         :
                                       :
            v.                         : No. 41 C.D. 2022
                                       :
Jimi Enterprises, Inc. (Workers'       :
Compensation Appeal Board),            :
                                       :
                    Respondent         :

# **O R D E R**

AND NOW, this 26<u>th</u> day of <u>June</u>, 2023, the order of the Workers' Compensation Appeal Board dated December 22, 2021, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge